## KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* DREW.

### Opinion delivered April 29, 1912.

1. RAILROADS—INJURY BY OPERATION OF TRAIN—PRESUMPTION.—Proof that one was injured by the operation of defendant's train raises a *prima facie* presumption of negligence on part of the railroad company. (Page 377.)

2. SAME—HIGHWAY CROSSING—DEGREE OF CARE.—The error of using the phrase "high degree of care," instead of "ordinary" or "reasonable care," in defining in an instruction the duty of a railway company at a crossing was not misleading where, in explaining what constituted such care, the court mentioned only such acts as the railway company would be required to do and perform in the exercise of ordinary care. (Page 377.)

3. SAME—NEGLIGENCE—FAILURE TO SIGNAL AT CROSSING.—Where the negligence of defendant's trainmen in failing to give the statutory signal of the approach of a train to a crossing was the proximate cause of plaintiff's injury, the defendant will be liable if the plaintiff was not guilty of contributory negligence. (Page 379.)

4. DAMAGES—PERSONAL INJURIES—EXCESSIVENESS.—Where there was testimony tending to prove that plaintiff was severely injured by defendant's negligence, that he came near dying, that his injuries were permanent and prevented him from working, and that his physicians charged him $125 for their attendance on account of such injuries, an award of $2,000 as damages was not excessive. (Page 380.)

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee, Mike Drew, brought this suit against the appellant railroad company to recover damages for injuries sustained by him while going over the tracks of the appellant at a public crossing in the town of Horatio, in Sevier County, Arkansas. The train crew of appellant had brought into the town of Horatio a long train of freight cars; the train was northbound, and was so heavy that the engine could not pull it up the grades north of Horatio. Immediately upon its arrival at Horatio, the train was stopped, and a part of it was left on the main track at the depot. The cars which were intended to be set out were pulled by the engine to the north end of the yards and above the crossing at which ap-

pellee was injured.  The accident occurred while these cars were being distributed on several tracks at the north end of the yard.  The engine was switching the cars back and forth and placing them at the time the accident occurred.  The railroad tracks at that point run north and south, and the public crossing extends across the track from east to west, leading in a northwesterly direction.

The appellee, Mike Drew, detailed the accident substantially as follows:

"I had been to Horatio for a load of freight, and was returning along the public highway in a northwesterly direction.  When I arrived in about one hundred yards of the public crossing, I saw the engine which struck me, switching back and forth in the yards.  I continued on my journey until I arrived in about twenty feet of the track, when I stopped.  The engine was about one hundred feet north of the crossing, and was pointed north.  I remained three or four minutes, and then started to cross the track."

We copy from his testimony the following question and answer:

"Q.  At the time you started across the track, what happened?  A.  Just before I started, the engineer looked as straight at me as I look at you, and when I started I suppose he started.  I could not tell anything about that, but any way he was on me before I knew it; and if he ever blowed a whistle or rung a bell, I never knew nothing about it."

Appellee has been deaf for about forty years, and did not hear the engineer ring the bell or blow the whistle when the engine started back towards the crossing.  Again he says:

"I got down to the crossing, the train backed about one hundred feet as near as I could get at it, and the engine stopped, and when the engineer stopped the engine I started, and when I got on the track it looked like he just came on as fast as he could, chug, chug, chug, and the first thing I knew  I was covered up under the wagon bed."

Appellee then detailed the extent and severity of his injuries.

Dorman Knight testified for appellee as follows:

"I was present at the time appellee was struck.  I was driving a hack, and was going from west to east, that is to

say, I was going in an opposite direction to that in which appellee was going. When I got to the track, I saw that I could cross the track before the engine would reach it. The engine was then headed north. I did not hear them ring the bell or blow the whistle when they started to back the engine down toward the crossing. The hind wheels of my buggy were not at that time off the track. The hind wheels were just coming up on the outside rails. In crossing the track I went to the right and appellee to the left; I was driving faster than appellee. There was nothing to obstruct the view of appellee or those in charge of the engine as far as the crossing was concerned. The engine was moving rapidly, and, so far as my knowledge goes, no effort was made to stop it after appellee got on the track. At the time the train started I had not yet gotten on the track, but I thought that I could get across, and did do so. At the time the train started, appellee was still further away from the track.''

For the appellant, the train crew testified that they were keeping a lookout, and neither the engineer nor the fireman saw the plaintiff on the track. The fireman and the engineer both testified that the bell was ringing all of the time when the engine was in motion. The engineer said that when he started to back towards the crossing he was looking ahead towards the crossing, but did not see appellee. He testified that he was looking in that direction all of the time except when he turned around to get signals from the fireman.

There was a trial before a jury, which resulted in a verdict for the defendant, and the case is here on appeal.

*Read & McDonough*, for appellant.

1. Instruction 1 is erroneous because it is not applicable to the facts in the case, this being, under the testimony, a case wherein the plaintiff was guilty of negligence, and the negligence of the company, if any, occurred after the discovery of his negligence and consequent peril. In such case bare proof that plaintiff was struck and injured by the engine does not raise a *prima facie* presumption of negligence on the part of the company.

2. The second instruction imposes a higher degree of care than the law requires. 94 Ark. 246, and authorities cited;

36 Ark. 451; 7 N. Y. 438; 1 Mo. 97; 49 Minn. 245; 79 Ia. 389; 15 Ohio C. C. 424; 57 O. St. 650; 4 Col. 524.

3. It was error to instruct the jury as to the sounding of the whistle and the ringing of the bell. The statute, Kirby's Dig., § 6595, applies to the running of an ordinary train upon the railroad where there are road crossings, and not to the operation of an engine in the yards while engaged in switching cars.

4. The verdict is excessive. 93 Ark. 24; 93 Ark. 579; 96 Ark. 394; *Id.* 638; 92 Ark. 400; *Id.* 437.

*Otis T. Wingo*, for appellee.

HART, J., (after stating the facts). It is first urged by appellant that the court erred in giving instruction No. 1 at the request of the appellee. The instruction is as follows:

"1. You are instructed that if you find from a preponderance of the evidence that the plaintiff was struck and injured by an engine on defendant's road, that this is *prima facie* evidence of negligence on the part of the defendant."

The appellee was injured by the operation of defendant's train, and there was no error in giving the instruction. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Evans,* 80 Ark. 19, the court held:

"Where it is established that the plaintiff was injured by the operation of a train, a *prima facie* presumption arises that the railroad was negligent." Other cases are cited in the opinion which sustain the holding of the court, and subsequent cases might be cited to the same point, but we deem the question so well settled that it is not necessary to do so.

2. It is next contended by counsel for appellant that the court erred in giving instruction No. 2 as asked by the appellee. The instruction is as follows:

"The jury are instructed that railway companies are charged with a high degree of care for the protection and safety of travellers upon highways at and in proximity to public crossings, and it is their positive duty to keep a constant lookout for such travellers, and to use every reasonable precaution consistent with the proper operation and management of their trains to avoid injuring them; and if you find from the evidence that the employees in charge of said engine

failed to exercise such care, then you are instructed that such failure to keep such lookout was negligence; and if the plaintiff was injured by reason of such negligence, and without fault on his part, then your verdict should be for the plaintiff."

At the crossing of a railroad track and a highway, both the railway company and a traveller on the highway are bound to use ordinary care; the one to avoid inflicting injury, and the other to avoid being injured, and the degree of care to be exercised by each is that which a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty.

This rule is so well settled in this court that we need only cite a few of the cases bearing on the question. *St. Louis & S. F. Rd. Co.* v. *Carr,* 94 Ark. 246; *St. Louis, I. M. & S. Ry. Co.* v. *Johnson,* 74 Ark. 372; *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134.

Tested by this rule, the instruction was erroneous, in so far as it told the jury that railroad companies are charged with a high degree of care for the protection and safety of travellers on a highway at a public crossing. Instructions are given for the guidance of the jury, and, under our Constitution, "judges shall not charge juries with regard to matters of fact, but shall declare the law." It is true that a jury might find under a given state of facts that ordinary care, or the care that a prudent man would exercise under the circumstances, would ,be a high degree of care, but this would be an inference of fact to be drawn by the jury in estimating the evidence, and would result from the jury following a train of reasoning presenting itself from the facts and circumstances adduced in evidence. It is not within the province of the court to so declare as a matter of law. It is true an instruction in precisely the same language was unqualifiedly approved by this court in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Carroll,* 73 Ark. 413, but such action of the court was contrary to the rule above announced, which as we have already seen is well settled by.the decisions both prior and subsequent to the Carroll case.

A careful examination and consideration of the whole instruction however leads us to the conclusion that the error was not prejudicial to the rights of appellant. Immediately

after telling the jury that the railroad company was charged with a high degree of care for the protection of a traveller upon a highway at a public crossing, the court defined what it considered to be a high degree of care; that is to say, the court told the jury that it was appellant's duty to keep a constant lookout for travellers at crossings, and to use every reasonable precaution consistent with the proper operation and management of their trains to avoid injuring them. This the law requires them to do, and such acts on their part only amount to ordinary care. Continuing, the court told the jury if it found from the evidence that the employees in charge of the engine failed to exercise such care, that it was instructed that such failure to keep such lookout was negligence, thereby in effect telling them that the failure to keep a constant lookout for travellers constituted negligence. So it may be said that, while the court told the jury that it was the duty of the railway company to exercise a high degree of care for the protection and safety of travellers at a public crossing, it went further and defined to the jury in a concrete form what acts were necessary to be performed by the servants of the appellant in the discharge of their duties toward such travellers, and the duties thus required to be performed by the servants of the railway company only amounted to the exercise of such care as a man of reasonable prudence and caution would exercise under the same circumstances. Thus we see that, when the whole instruction is considered, it does not appear that the action of the court amounted to an expression of opinion that under the evidence the railroad company should be held to a high degree of care, but the phrase "high degree of care," as specifically defined by the court, only amounted to ordinary care. In short, while the court used the words "high degree of care," yet, in explaining to the jury what constituted such care, the court mentioned only such acts as the railway company would be required to do and perform in the exercise of ordinary care.

In this view of the matter, we do not think that appellant was prejudiced by the action of the court.

3. It is next insisted by the counsel for the appellant that the court erred in giving instruction No. 3, which is as follows:

"You are instructed that it is the duty of a railway company to sound the whistle or ring the bell within at least eighty rods of a public crossing and to keep the whistle sounding or the bell ringing until the crossing is passed or the train stopped, and that a failure to do so is negligence; so in this case, if you believe from a preponderance of the evidence that the defendant was negligent in this regard, and that such negligence was the proximate cause of the injury, and that the plaintiff exercised ordinary care for his own safety, your verdict should be for the plaintiff."

They say that the accident occurred while the engine was switching back and forth in a space not to exceed 200 feet, and that the effect of the instruction was to tell the jury that the failure to keep the bell ringing at any point for a distance of 1,320 feet was negligence.

We do not think that the instruction is open to that objection. The instruction is based on section 6595 of Kirby's Digest, which provides that railroad companies are liable for all damages caused by their omission to ring a bell or sound a whistle as required by the statute. The appellee had the right to assume that the engineer would not move the train over the crossing without giving the signals or warnings required by the statute. The instruction in effect told the jury that a failure to give the statutory signal on approaching the crossing constituted such negligence on the part of the railway company as to make it liable, provided the jury found such negligence was the proximate cause of the injury, and that appellee was not guilty of contributory negligence.

In the case of *Ark. & La. Ry. Co.* v. *Graves*, 96 Ark. 638, the court held that where the negligence of the defendant's trainmen in failing to give the statutory signal of the approach of a train at an established crossing was the proximate cause of plaintiff's injury, the defendant will be liable if the plaintiff was not guilty of contributory negligence. To the same effect, see *Fort Smith & Western Ry. Co.* v. *Messek*, 96 Ark. 243.

4. The jury returned a verdict in favor of the appellee for $2,000, and it is claimed by counsel for appellant that the judgment should be reversed because the verdict is excessive. The appellee testified that he was severely injured. He said

that he came near dying, and spit up much blood for months after he received the injuries. He laid in bed forty days without getting up. After he got up he tried to pick cotton, but could not do it, because of the pain in his arms and legs. He says that he can not raise his right arm at all now. He was sixty-nine years of age at the time he received the injury, was a stout, able-bodied man, and was able to perform manual labor of all kinds. The testimony of the physicians who treated him tended to substantiate his evidence in regard to the character of his injuries. They treated him about two months after the accident, and charged him $125 for their services. Each of them said that appellee's elbow got stiff and required considerable attention. Each physician said that they treated him altogether about two and a half or three months before they finally discharged him, and say that his injuries were not permanent. As above stated, appellee himself stated that his injuries are permanent, and that he can not now perform the manual labor which he could perform before he was injured.

While the allowance of damages made by the jury was very liberal, we can not say, in the light of all of the testimony as the jury may have viewed it, that the damages are excessive.

5. The negligence of the appellant and the contributory negligence of the appellee were properly submitted to the jury, and, under the facts of the case as detailed above, we think that the testimony was sufficient to warrant the verdict. In the case of *Majors* v. *St Louis, I. M. & S. Ry. Co.*, 95 Ark. 94, the court held:

"Where, in a suit against a railroad company for injury to a traveller at a crossing, the evidence tended to prove that the railroad company was negligent in failing to signal, and that the trainmen discovered plaintiff driving a team across the track, when the train was 150 or 200 feet from the crossing, and that as it was plaintiff almost succeeded in crossing the track before the train struck and injured him, it was a question for the jury whether, if the signals had been given, plaintiff would have escaped injury, and therefore it was error to direct a verdict for the defendant."

The judgment will be affirmed.