HINES v. JOHNSON.

Opinion delivered January 30, 1922.

1. DEATH—DAMAGES NOT EXCESSIVE WHEN.—In a suit for the death of a seven-year-old boy, a verdict for $3,000 *held* not excessive where the suit was for compensatory damages to the next of kin as well as damage to estate of deceased for pain and suffering.

2. APPEAL AND ERROR—WEIGHT OF EVIDENCE.—The weight of evidence is for the jury, and not for the appellate court.

3. RAILROADS—NEGLIGENCE IN OPERATION OF TRAINS.—In an action for the death of a child struck by a freight train on a bridge, evidence *held* to sustain a finding of negligence in operating a train without maintaining a lookout.

4. RAILROADS—NEGLIGENCE—INSTRUCTION.—In an action for the death of a child seven years old, struck by a freight train on a bridge, an instruction that if deceased was upon the track in a perilous position, and the train or some part thereof ran over him and fatally injured him, and the employees of the train, by keeping a constant lookout and using ordinary care, could have avoided such injury, and failed to do so, the jury should find for the plaintiff, *held* proper.

5. APPEAL AND ERROR—ERRONEOUS INSTRUCTION—HARMLESS ERROR.—In an action for the death of a child run over by a freight train, an instruction to find for plaintiff if the train or some part of it ran over deceased was not prejudicial to defendant in submitting the question whether the child was injured by an engine or a box car, contrary to defendant's theory that the engine struck him, since, if defendant was negligent, it was responsible whether the child was struck by the engine or by the box-car.

Appeal from Benton Circuit Court; *W. A. Dickson,* Judge; affirmed.

*James B. McDonough,* for appellant.

*Rice & Rice,* and *J. W. Nance,* for appellee.

HUMPHREYS, J.   This case is before us on a second appeal. On the first appeal it was reversed because the trial court instructed that the right of recovery for the loss of the services of the deceased during minority was in the mother, instead of in the father, as he was living at the time of the death of the child and entitled to inherit from the child as next of kin under the statute of descent and distribution. The trial, upon the remand of the case,

resulted in a verdict and judgment against appellant in the sum of $3,000, from which is this appeal.

Appellant's first insistence for reversal is that the verdict is excessive. The contention is made that no part of the recovery was for pain and suffering, as the complaint was for a recovery of compensatory damages only to the next of kin, and that $3,000 is an excessive allowance for compensatory damages alone. We cannot agree with appellant that the allegations of the complaint failed to allege pain and suffering as an element of damage. The suit was instituted by Ethel Johnson as the administratrix of the estate of Charles M. Johnson, deceased, and is one cause of action for all purposes. It was in no sense an individual suit of Ethel Johnson. All allegations contained in the complaint must be regarded as allegations setting forth a cause of action in favor of the estate of Charles Johnson, deceased. The allegation, therefore, of pain and suffering in the complaint must be treated as an element of damage claimed by appellee in her representative capacity for the benefit of the estate. The evidence tended to show that the deceased child endured much pain and suffering before its death. We cannot say that $3,000 on its face was an excessive allowance, covering, as it did, all alleged elements of damage, compensatory as well as for pain and suffering of the deceased.

Appellant's next contention for reversal is that the verdict is not supported by any substantial evidence. The substance of the evidence on the first trial was set out in the opinion on the first appeal and will be found in 145th Arkansas Reports, page 592, under the style of *Hines* v. *Johnson*. The evidence on the second trial is not materially different from the evidence at the first trial. Appellant introduced three witnesses who did not testify on the first trial, namely, L. E. DeGroate, W. M. Glancie and Mrs. Norah Hudspeth. DeGroate and Glancie, who were brakemen on the south-bound train, which passed the north-bound train at the station, testi-

fied that they were the first to get to the deceased; that he was dead when they got to him; that they picked him up and carried him off the bridge to the west of the track; that Mrs. Hudspeth arrived immediately after they did this and spread her apron over the boy to prevent the mother, who had not yet arrived, from observing his mangled condition. Mrs. Hudspeth testified that she arrived at the scene of the accident before the mother of deceased and spread her apron over him to prevent his mother from seeing his condition when she came; that the child was dead, and had been removed from the bridge when she got to him. It will be observed that the testimony of these three witnesses is merely contradictory of the testimony of appellee, her daughter and son, who testified, in substance, that they were the first to reach the scene of the injury, and that the child lingered and suffered nearly an hour before it died. The additional testimony is corroborative of the testimony adduced by appellant in the first trial, but it does not materially change the case made by the testimony adduced on the first trial. It simply strengthened appellant's case upon the facts and left a conflict in the evidence to be settled by the verdict of the jury. The weight of the evidence is a matter for determination by the jury, and not by the court. According to the evidence, in its most favorable light to appellee, this child wandered on the walkway of the bridge in close proximity to the track, and in running towards the north stubbed its toe on a nail near the east side of the walkway and fell in a northeasterly direction towards the track, across the west rail, and remained there until struck and fatally injured by the engine of a freight train, rapidly approaching from the south; that, although approaching and near a road crossing, signals of approach were not given and a lookout was not kept by those operating the train; that the track to the south, from which direction the train approached, was straight for a mile. This evidence, if true, which was a question for the jury to determine,

was substantial and sufficient to support a verdict based upon the alleged negligence of appellant's servants in operating the train that struck and killed the child.

Appellant's next insistence for reversal is that the court erred in instructing the jury upon the lookout and warning statutes. We ruled upon the former appeal that the facts, not materially different from the facts of the present appeal, warranted an instruction upon both statutes. The reasons for the ruling were fully stated in the former opinion, and we deem it unnecessary to reiterate them.

Appellant's next insistence for reversal is that the court erred in instructing the jury that they might assess damages resulting from conscious pain and suffering endured by deceased, if the proof showed that he endured any conscious pain and suffering on account of the injury before he died: The argument is made that the complaint only prayed for compensatory damages, and not for damages to the estate on account of pain and suffering by deceased. In response to appellant's contention that the verdict was excessive, we construed the allegations of the complaint as broad enough to cover damage to the estate on account of pain and suffering of the deceased.

Appellant's last insistence for reversal is that the court erred in giving appellee's requested instruction No. 4, which is as follows:

"If you find that the deceased was upon the railroad track in a perilous position in front of a train as it approached, and you further find that said train or some part thereof ran over and fatally injured Charles Johnson, and you further find that the employees of said railroad train, by keeping a constant lookout and using ordinary care, could have avoided such injury, and that they failed to keep such lookout, and by reason of such failure the injury occurred, you should find for the plaintiff."

The argument is made that there was not sufficient substantial evidence tending to show that the child was in a perilous position in front of the train as it approached to warrant the instruction. There was a walkway on the bridge three feet west of the west rail of the track for the use of employees in walking over the bridge. According to appellee's evidence, the child was running on this walkway towards the north as the train was approaching from the south. The child was small, being only seven years of age. We think a child of tender years running over a bridge on a walkway in such close proximity to the railroad track was in a perilous situation, and must be so regarded by employees operating the train.

Again, it is argued that the instruction is erroneous because it submitted to the jury the question of whether the child was injured by an engine or a box car when the theory of appellee was that an engine struck and injured the child. In the first place, we do not think the form of the instruction could have prejudiced appellant. If the child running in front of the train was in a perilous position, and the injury could have been prevented had the employees kept a proper lookout and used proper care, then the appellant was responsible for the injury, whether it was struck by the engine or a box car. In the next place, learned counsel for appellant does not fully state appellee's theory of how the injury occurred. Appellee's theory was that the child's arm was cut off by the engine and in attempting to rise was struck on the head by a box car. In other words, appellee's theory was that deceased was injured by both the engine and a box car. We think the instruction correctly declared the law as applicable to the facts.

No error appearing in the record, the judgment is affirmed,