Missouri Pacific Railroad Company, Thompson, Trustee, *v.* Moore.

4-7868                                        193 S. W. 2d 657

Opinion delivered April 8, 1946.
Rehearing denied April 29, 1946.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Joe W. McCoy* and *W. H. McClellan,* for appellee.

MINOR W. MILLWEE, Justice. The plaintiff, Emma Lee Moore, a minor seven years of age, brought this action by her father, as next friend, to recover damages for injuries sustained when she was struck by a freight train of the defendant railway company on April 14, 1944. The complaint alleged negligence on the part of defendant and its employees in failure to keep a lookout and to exercise reasonable care to prevent injuring plaintiff after discovering her peril. It was also alleged that the trainmen negligently failed to give warning signals and to bring the train under control when they realized plaintiff was in a perilous position and oblivious to danger.

The answer of the company was a general denial and a plea of contributory negligence of the child, and negligence of the child's mother in permitting the child to place herself in a perilous position. It was further alleged that plaintiff's injuries, if any, were due to an unavoidable accident. The company prosecutes this appeal from a verdict and judgment in the plaintiff's favor for $3,000.

There are two tracks on the line of the railroad running generally north and south through the city of Malvern. Calhoun Crossing is just north of the railway station, and approximately a mile further north is what is known as the East End Crossing. A footpath runs irregularly along the side of the east track between the two crossings and has been used by people living along the track and by the public generally for many years.

According to the testimony on behalf of plaintiff, she, in company with her mother, grandmother and sister, was returning from a visit with relatives about 7 p. m. on the day the injury occurred. It was still daylight, and they were walking southward in a pathway along the east side of the east rail of the track in single file with the child about a block ahead of her mother. As they approached a point near Calhoun Crossing, a freight train was approaching from the north. The mother discovered the approach of the train and after warning the grandmother and sister, who were walking behind her,

started running and calling to plaintiff who was walking near the east rail of the track. The child continued walking with her back to the approaching train and before her mother could reach her the front of the train passed and the child was struck by some part of the side of the train. Several witnesses for plaintiff testified that no warning signals were given and that the train did not slacken speed until after the child was struck. The view of the trainmen was unobstructed for a distance of more than 1,500 feet from the point of injury.

The defendant's fireman testified that he was keeping a lookout and saw the group a half mile away; that they were together and backed away from the pathway on the shoulder of the right-of-way as the train approached, but the little girl broke loose from someone who was holding her and chased a dog that ran on the tracks in front of the train; that he gave the stop signal to the engineer who applied the brakes immediately; that the child was struck by the pilot or step of the engine as she reached for the dog. He testified that the whistle and bell were sounded continuously from the East End Crossing until the child was struck, and that the train was running 45 miles an hour. The engineer, who was on the right side of the cab and did not see the parties, testified that the regular crossing signal was given, but the whistle was not sounded continuously.

At least three witnesses testified that the mother told them the child was chasing a dog, but this was stoutly denied by the mother and several witnesses supported her version as to the position of the child and how the injury occurred. It will thus be seen that the evidence is in sharp dispute as to whether the child was walking near the track in a perilous position and apparently oblivious to her dangerous situation, or whether she suddenly ran from a point of safety in front of the approaching train.

The court gave defendant's requested instruction No. 11A on this point as follows: "You are instructed that if you find and believe from a preponderance or a greater weight of the evidence that the plaintiff, Emma

Lee Moore, ran upon or near the railroad track while she was chasing her dog and at the time the train was approaching and that by the exercise of ordinary care, the operators of the train could not avoid striking her, then you are told that the defendant or operator of the train would not be negligent and you should so find."

The defendant first contends there is no evidence of negligence on the part of the operators of the train and that the testimony is insufficient to support the jury's verdict. It is argued that the testimony of the fireman shows conclusively the giving of the signals and absence of negligence on the part of the trainmen.

In determining whether there is substantial evidence to support the verdict of the jury, we must view the testimony in the light most favorable to appellee. When we do this, we cannot say as a matter of law that the operators of the train were free from negligence in the giving of warning signals or taking proper precautions to avoid the injury after discovering the perilous position of the child, or, after such discovery should have been made by the exercise of ordinary care. If the fireman had an unobstructed view of the right-of-way and plaintiff was walking dangerously near the track and gave no evidence that she was aware of the approach of the train and no signals were given, as the witnesses in plaintiff's behalf testified, we cannot say the injury might not have been avoided by due diligence of the trainmen. The court properly left it to the jury to say under the circumstances whether the trainmen were in the exercise of ordinary care.

In the case of *St. Louis S. W. Ry. Co.* v. *Thompson,* 89 Ark. 496, 117 S. W. 541, this court said: "The law governing the duty of a railroad company to a trespasser upon its track or to one who at or near its track has become imperiled by his own negligence has been stated frequently by this court.

"It is well established that when a defendant becomes aware of the plaintiff's negligence and of the danger to which that negligence exposes him, and yet

fails to exercise ordinary care in avoiding it, he is liable for the injury.''

The case of *St. Louis, I. M. & S. R. Co.* v. *Denty*, 63 Ark. 177, 37 S. W. 719, involved an injury to a child four years of age and the court said: ''The failure of the company to keep a lookout would not excuse an adult person who carelessly sat or stood upon the track and allowed a train to strike him. Under the previous decisions of this court, such a person could not recover; but with an infant four years of age the rule is different. A child of that age does not possess sufficient discretion to be adjudged guilty of negligence; and if the employees of the company in charge of the train were guilty of carelessness causing injury, the company must respond in damages.''

The case of *Hines* v. *Johnson*, 151 Ark. 549, 236 S. W. 835, involved an injury to a seven-year-old child. There it was said: ''The argument is made that there was not sufficient substantial evidence tending to show that the child was in a perilous position in front of the train as it approached to warrant the instruction. There was a walkway on the bridge three feet west of the west rail of the track for the use of employees in walking over the bridge. According to appellee's evidence, the child was running on this walkway towards the north as the train was approaching from the south. The child was small, being only seven years of age. We think a child of tender years running over a bridge on a walkway in such close proximity to the railroad track was in a perilous situation, and must be so regarded by employees operating the train.''

Various objections were made by the defendant to the proof offered by plaintiff tending to show that the pathway over which the parties traveled had been used by them and the public generally for a long period of years. Defendant also objected to the giving of plaintiff's requested instruction No. 5 which told the jury that, if they believed from the preponderance of the evidence that the pathway upon which plaintiff was walking had

been used by the public over a period of years without objection on the part of the defendant, then plaintiff would not be a trespasser but a mere licensee, and defendant owed her a duty to use reasonable care to avoid injuring her.

In support of its contention that the testimony regarding the use of the pathway was inadmissible, and the instruction erroneous, defendant relies on the case of *Chicago, R. I. & P. Ry. Co.* v. *Payne*, 103 Ark. 226, 146 S. W. 487, 39 L. R. A., N. S., 217. That case involved the liability of the railroad to a trespasser or licensee on its right-of-way who was injured by reason of the defective condition of a footpath, and the court held there was no liability in the absence of an express or implied invitation to such party to be there. Mr. Justice Wood pointed out in the opinion, however, that railway companies, under the lookout statute in effect at that time, owed to persons on their tracks the duty to exercise ordinary care to keep a lookout whether such persons were there by invitation, or as licensees, or trespassers. The case of *Arkansas Short Line* v. *Bellars*, 176 Ark. 53, 2 S. W. 2d 683, also relied upon by defendant, involved the injury of a woman walking upon the track in preference to using a path alongside the track. The court held she was a mere licensee in using the track and the company owed only the duty not to willfully or wantonly injure her, or the duty to exercise ordinary care not to injure her after discovering her peril. We think evidence of the use of the footpath was admissible; and that the instruction, when considered with the other instructions given at the request of both parties on this issue, conforms to the principles that have been announced in our cases. *Mo. & N. A. R. Co.* v. *Bratton,* 85 Ark. 326, 108 S. W. 518; *Moody* v. *St. Louis, I. M. & S. Ry. Co.,* 89 Ark. 103, 115 S. W. 400, 131 Am. St. Rep. 75; *Mo. Pac. R. Co.* v. *McKinney,* 189 Ark. 69, 71 S. W. 2d 180.

It is next insisted that the court committed error in failing to declare a mistrial because counsel for plaintiff invited counsel for defendant to examine injuries to the child's head which were being pointed out to the jury.

While we agree that such invitation and the ensuing colloquy between counsel was improper, we do not agree that it was so prejudicial as to call for a mistrial by the court.

The court gave instructions Nos. 1 and 4 at the request of plaintiff as follows: "No. 1—The court instructs the jury that a child of tender years cannot be guilty of negligence, so if you find in this case by a preponderance of the evidence that Emma Lee Moore was a child of such tender years that she did not have the capacity to appreciate dangers and hazards and to exercise care and prudence for her own self-preservation, she would not be guilty of negligence and her rights could not. be defeated by any careless act of hers. Also, you are told that any acts of carelessness or negligence on the part of the child's mother could not be imputed to the child. In other words, any rights that Emma Lee Moore may have in this case cannot be defeated because of some act of carelessness or negligence by her mother."

"No. 4—You are instructed that contributory negligence is the doing of something that a person of ordinary prudence would not do or the failure to do something that a person of ordinary prudence would do under like circumstances; and in this case in determining whether Emma Lee Moore could be guilty of contributory negligence you should consider the facts in the light of the circumstances as they existed at the time, and the age and experience and knowledge of the child, and the experience and knowledge that a person of the age of said child should have had, and whether a child of her age would have such experience and knowledge that she could be held accountable for any careless acts on her part."

It is contended that the instructions incorrectly stated the law and ignored the negligence of the plaintiff's mother in permitting the child to walk near the railroad track. A distinction is made in the decisions between a suit where recovery is sought for the benefit of the child only, and the case where the parent is suing

for loss of contributions and services of the child. In the first case the negligence of the parent may not be imputed to the child, while the rule is different where the suit is for the benefit of the parent. In *St. Louis S. W. Ry. Co.* v. *Cochran,* 77 Ark. 398, 91 S. W. 747, this court said: "A child of tender years cannot be guilty of negligence, nor can the contributory negligence of the parent be imputed to it, so as to prevent a recovery in a suit brought by the child to recover damages for injury caused by the negligent act of another. But the father may, in a suit brought for his own benefit for the negligent killing of his child, be chargeable with negligence contributing to the injury." See, also, *St. Louis, I. M. & S. Ry. Co.* v. *Colum,* 72 Ark. 1, 77 S. W. 596; *St. Louis, I. M. & S. Ry. Co.* v. *Flinn,* 88 Ark. 484, 115 S. W. 142; *St. Louis, I. M. & S. Ry. Co.* v. *Sparks,* 81 Ark. 187, 99 S. W. 73; *St. Louis S. W. Ry. Co.* v. *Adams,* 98 Ark. 222, 135 S. W. 814; Annotation, 15 A. L. R. 414. The instant suit is brought solely for the benefit of the child and the instructions complained of correctly declared the applicable rule.

It is also cotended that the verdict is excessive. The plaintiff received a rather severe skull fracture. A piece of the skull which was pressing on the brain and causing convulsions was removed. The child was rendered unconscious for a period of two months while confined in the hospital and for some time after she was removed to her home. There was some evidence of paralysis resulting from the head injury, and forced feeding by means of a rubber tube through the nose was necessary for a period of four months. An arm was broken and there was evidence of considerable pain. Under the testimony adduced on this issue, we cannot say the verdict is excessive.

There are other assignments of error in the giving of certain instructions requested by plaintiff, and the refusal to give instructions requested by defendant. We have carefully examined the instructions given by the trial court and those refused at the request of defendant, and find those given correctly declared the applicable law and fully and fairly covered the issues involved.

Finding no error, the judgment is affirmed.