MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE *v.* FRYE.

4-8629                                     214 S. W. 2d 495

Opinion delivered November 8, 1948.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Mallory & Rasmussen* and *Fred D. Johnson,* for appellee.

MINOR W. MILLWEE, Justice. Loyd Henry Frye, a ten-year-old boy, was struck and killed by a train of appellant railway company at a public crossing near the City of Hot Springs on May 29, 1946. This action was brought by appellee, Vernon C. Frye, as father for loss of services and as administrator of his son's estate, against the railway company and against the engineer and fireman upon the locomotive involved in the tragedy.

Appellee alleged that the railway company knowingly maintained a dangerous crossing by negligently permitting the growth of weeds and shrubs on their right-of-way thereby obstructing the view of travelers approaching the crossing; that employees of the railway

company operated the train at the time of the accident at an excessive speed, failed to keep a lookout and failed to give the signals required by law; and that the operators of the train failed to exercise ordinary care after belatedly discovering the perilous situation of the truck driven by deceased's. mother at the time the boy was killed.

The answer of appellants denied the allegations of the complaint and alleged that, if Loyd Henry Frye was killed, his death was brought about by the gross negligence of the driver of the truck and the contributory negligence of deceased in jumping off the truck onto the tracks in the face of the train. It further alleged contributory negligence of appellee and his wife in permitting deceased to ride in a dangerous position, and that his death was due to an unavoidable accident.

There was a verdict and judgment for appellee against the railway company for $5,250.

The company has appealed and the assignments of error relate to the sufficiency of the evidence to support the verdict, the modifying, giving and refusing certain instructions, the admission and refusal to admit testimony and denial of a motion to permit the jury to view the scene of the accident.

It is first earnestly contended that the evidence is insufficient to support the verdict because no negligence was shown on the part of the railway company or its employees, and that the negligence of deceased's mother was the sole and proximate cause of his death. The crossing where young Frye was killed traverses U. S. Highway 70 which runs generally north and south near the municipal airport southwest of the City of Hot Springs. This crossing is a part of the branch line of the railway running from Hot Springs west to Mountain Pine, Arkansas, over which one train is operated daily. On the morning of May 29, 1946, Mrs. Vernon C. Frye was driving a truck on a return trip from Hot Springs to her farm home southwest of the city. Other occupants of the truck were Mr. and Mrs. Ernest Davis, their two children and Loyd Henry Frye. Mrs. Davis, a sister of

Mrs. Frye, and her 18-month-old infant sat in the cab of the truck with the driver. Ernest Davis, his six-year-old son and Loyd Henry Frye sat on a tire and wheel which was up against the cab on the truck bed. The bed of the truck was equipped with standards about four feet high on each side with the end of the truck open.

Mrs. Frye testified that she was driving south between 20 and 25 miles per hour as she approached the crossing and was looking and listening for a train, but heard no signals. The weather was clear and the truck windows were down. Her view to the right was obstructed by a four-foot embankment covered with sage grass, weeds and bushes and a large road sign on the embankment about 55 feet from the tracks. When she reached a point about 50 feet from the crossing, she observed the train coming east about 150 feet west of the crossing. There was a sudden blast of the whistle of the locomotive which was blown for the first time as she was about 35 feet from the tracks. She applied the brakes when she saw the train, but concluded that she might not be able to stop the truck before it reached the tracks and that her safest course was to cross in front of the train, which she barely succeeded in doing. Mrs. Frye had traveled the road many times before and had been driving trucks for 18 years. The truck was equipped with mechanical brakes which had recently been repaired, but were not as effectvie as hydraulic brakes. She looked at the train, but did not see anyone in the cab of the locomotive on her side.

The testimony of Mrs. Davis corroborated that of her sister on the failure of the trainmen to ring the bell or blow the whistle until it neared the crossing. She looked through the rear view mirror as the truck cleared the crossing and saw the boy as he fell on the tracks a few feet in front of the locomotive.

Mr. Davis testified that he was standing behind the cab and observed the train when they were about 75 feet from the crossing and called to Mrs. Frye; that the train did not whistle until after he "hollered"; and that he watched the train until the truck cleared the

crossing and the boy was lying on the crossing when he looked back. The pilot of the locomotive rolled the boy for several feet and he was then run over by the locomotive and one or two cars of the train. Another witness testified that he saw the boy jump from the truck as it passed over the crossing.

Members of the train crew contradicted the testimony offered by appellee on the giving of signals. Engineer Wagner, who was acting as fireman, testified that the bell was turned on at a point about 800 feet from the crossing and that it was still ringing after the accident; and that the usual whistling signal was given for the crossing. He occupied the cab on Mrs. Frye's side of the crossing while the fireman was acting as engineer and his view of the north side of the crossing was obstructed by the boiler of the locomotive. Wagner testified:

"Q. Now, without me asking you, you go right on and tell the jury just what you saw and did there that morning. A. Well, I was there in the fireman's position in the cab and saw the truck coming and didn't know for sure whether it was going to stop or not. We were about a hundred and fifty feet from the crossing when it was up there in fifty feet of the crossing, and you can't tell whether they are going to stop or going to cross. But after she did start across I saw she had ample time to make it and I never notified the engineer that there was anything."

He also testified that the train could have been stopped before it reached the crossing, if the brakes had been applied when he first observed the truck. He made the trip to Mountain Pine about once every two years. The rules of the company restricted the speed of trains to 15 miles per hour at the point of the accident. Members of the train crew testified that the train was running about 12 miles per hour as it approached the crossing while Mrs. Frye testified that it was going faster. There was other testimony of the trainmen from which the jury could have found that the train was traveling in excess of 15 miles per hour.

In challenging the sufficiency of the evidence to support the verdict, counsel for the railway company rely on several cases where recovery has been denied under facts which are different from those in the instant case. In most of the cases cited the injured plaintiff was also the driver of the vehicle involved in the collision while in the case at bar Mrs. Frye is neither the injured party nor a party to the suit. If the death of Loyd Frye was the proximate result of the concurring negligence of the railway company and Mrs. Frye, the company would still be liable. *Mo. Pac. Railroad Co. v. Riley*, 185 Ark. 699, 49 S. W. 2d 397. When the testimony here is given its strongest probative force in favor of appellee, we hold that a jury question was made as to the negligence of appellant and the contributory negligence of deceased and the driver of the truck. The evidence was sufficient to make a jury question as to whether the statutory signals were given and a proper lookout was kept by the operators of the locomotive; also, whether the engineer and fireman exercised reasonable care after discovering the perilous situation of the truck. The jury could have found that Mrs. Frye and her son were confronted with an emergency arising from the failure to give the crossing signals and that the operators of the train failed to exercise reasonable care after discovering the perilous position of the truck and its occupants.

Error is also assigned in the refusal of the court to permit the introduction of two photographs without being separated and the action of the court in requiring them to be introduced as separate exhibits. The photographer testified that the exhibits represented two separate pictures taken from the highway about 65 feet north of the crossing. The two photographs were joined together by a piece of cloth tape and offered in evidence by appellants as one photograph and exhibit. The court first ordered the pictures separated, but later ruled that they might be left together but marked as separate exhibits and that the jury should so consider them. The court did not commit error. There was considerable testimony on the question whether the unseparated

photographs presented an accurate view of the crossing scene. Since it is undisputed that there were two separate pictures, they should have been introduced as such and the jury, if it so desired, permitted to arrange them as it saw fit in accordance with the testimony.

Error is also assigned in the giving of appellee's requested instruction No. 5 involving the lookout statute (§ 11144, Pope's Digest). One of the specific objections made to the instruction was that it placed a higher degree of care upon the railway company and its employees than required by law. After setting out the duty of appellants in the language of the statute, the instruction further told the jury that the duty of keeping a constant lookout "was of a greater degree when approaching a highway crossing, such as the highway crossing at which Loyd Henry Frye was fatally killed." It further told the jury that if they found the crossing was unusually dangerous because of obstruction of the view, then the duty of keeping a lookout "was of a still greater degree, and unusual precaution was required of the defendants."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Carroll,* 73 Ark. 413, 84 S. W. 475, the court approved an instruction stating that railway companies are charged with a high degree of care for the protection of travelers upon the highways at public crossings. However, in the case of *Kansas City Southern Ry. Co.* v. *Drew,* 103 Ark. 374, 147 S. W. 50, the same instruction was held to be erroneous and the Carroll case overruled. Justice HART, speaking for the court in that case said:

"At the crossing of a railroad track and a highway, both the railway company and a traveller on the highway are bound to use ordinary care; the one to avoid inflicting injury, and the other to avoid being injured, and the degree of care to be exercised by each is that which a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty.

"This rule is so well settled in this court that we need only cite a few of the cases bearing on the question. *St. Louis & S. F. Rd. Co.* v. *Carr,* 94 Ark. 246, 126 S. W.

850; *St. Louis, I. M. & S. Ry. Co.* v. *Johnson,* 74 Ark. 372, 86 S. W. 282; *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134, 62 S. W. 64.

"Tested by this rule, the instruction was erroneous, in so far as it told the jury that railroad companies are charged with a high degree of care for the protection and safety of travellers on a highway at a public crossing. Instructions are given for the guidance of the jury, and, under our Constitution, 'judges shall not charge juries with regard to matters of fact, but shall declare the law.' It is true that a jury might find under a given state of facts that ordinary care, or the care that a prudent man would exercise under the circumstances, would be a high degree of care, but this would be an inference of fact to be drawn by the jury in estimating the evidence, and would result from the jury following a train of reasoning presenting itself from the facts and circumstances adduced in evidence. It is not within the province of the court to so declare as a matter of law. It is true an instruction in precisely the same language was unqualifiedly approved by this court in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Carroll,* 73 Ark. 413, 84 S. W. 475, but such action of the court was contrary to the rule above announced, which as we have already seen is well settled by the decisions both prior and subsequent to the Carroll case."

The court also held in the Drew case, *supra,* that the erroneous instruction was not prejudicial because the court, in explaining what constituted "high degree of care" in the instruction, mentioned only such acts as the railway company would be required to do in the exercise of ordinary care. The instruction here is not susceptible of this construction and there is no explanation of what would constitute "unusual precaution" on the part of the operators of the train. The effect of the instruction was to charge appellants and its employees with a duty of exercising care of a higher degree than reasonable or ordinary care. Respectable authority based on decisions of other jurisdictions is cited by appellee in support of the instruction, but we are con-

strained to follow our own cases and conclude that giving of the instruction was erroneous and prejudicial.

Objection was also made to the giving of instruction No. 7 requested by appellee, which reads: "The Court instructs the jury that, even if you believe from the evidence, that Loyd Henry Frye's mother, the driver of the truck in which he was riding, was guilty of negligence, still such negligence if any, upon her part cannot be charged against or imputed to the deceased, Loyd Henry Frye, and it is not a defense to this suit."

The suit was brought by the father of the deceased on behalf of the estate of his son and for loss of services to the father. Mrs. Frye, the driver of the truck, is not a party and her negligence is not imputed to the deceased under our decisions. In *St. Louis S. W. Ry. Co.* v. *Cochran,* 77 Ark. 399, 91 S. W. 747, it is said: "A child of tender years cannot be guilty of negligence, nor can the contributory negligence of the parent be imputed to it, so as to prevent a recovery in a suit brought by the child to recover damages for injury caused by the negligent act of another. But the father may, in a suit brought for his own benefit for the negligent killing of his child, be chargeable with negligence contributing to the injury." Other decisions reaffirming this rule are cited in *Mo. Pac. Rd. Co.* v. *Moore,* 209 Ark. 1037, 193 S. W. 2d 657. Appellant recognizes this rule, but contends that under the instruction the negligence of Mrs. Frye would be no defense even though such was the sole and proximate cause of her son's death. The instruction is open to this objection and should be modified by adding "unless the jury further finds from a preponderance of the evidence that the negligence of the mother was the sole and proximate cause of her son's death."

It is also insisted that the court erred in giving appellee's requested instruction No. 8 which dealt with the contributory negligence of Loyd Henry Frye. Appellant says the instruction is argumentative and based on facts not proven in the case. The instruction conforms to the holding of this court in *St. Louis-San Francisco Ry. Co.* v. *Steele,* 185 Ark. 196, 46 S. W. 2d

628.   In that case it was held that appellee, an adult riding with another, was not guilty of contributory negligence, as a matter of law, in jumping from a car upon the approach of a train at a crossing.   The court said:  ''Appellee was required to exercise ordinary care for his own safety under the circumstances, and, if it appeared to him, as it evidently did, that the car was going to be struck by the train, he had the right, of course, to make the effort to get out of the car and avoid the danger, and was not necessarily negligent in attempting to do so, and certainly not guilty of contributory negligence as a matter of law that would bar his recovery, or of negligence at all, if the jury found, as they might have done, that a person of ordinary care and prudence might have made such an attempt in the emergency.'' No error was committed in the giving of the instruction which is not open to the objections made by appellants.

Complaint is made of the denial of appellants' request that the jury be permitted to view the scene of the accident.   The trial was in December and the accident occurred in May when foliage was more abundant.   Pictures had also been introduced which were taken on the day following the accident to show conditions at the crossing.   Under § 1518 of Pope's Digest, it is within the sound discretion of the court to determine whether the jury should view the crossing scene.   *Mo. Pac. Rd. Co.* v. *Foreman,* 196 Ark. 636, 119 S. W. 2d 747; *Holiman* v. *Rice,* 208 Ark. 279, 185 S. W. 2d 927.   Under the circumstances here, we cannot say that the trial court abused its discretion in refusing appellants' request.

Error is also assigned because the court refused to give appellants' instruction No. 4A as requested and modified said instruction by striking therefrom the following:  ''You are instructed that the defendants were not the insurers of the safety of the deceased, Loyd Henry Frye, while he was riding in the truck driven by his mother, Mrs. Vernon C. Frye, or while they were attempting to cross over the defendants' track at the airport crossing in Garland county, Arkansas  . . .'' The portion eliminated is the law and in the nature of a cautionary instruction that is ordinarily given in cases

of this kind. It is true that appellee did not allege that appellants were insurers of deceased's safety, but we are unable to say that the language stricken is irrelevant in view of all the facts and circumstances in evidence in the instant case. We, therefore, conclude that the instruction should have been given without modification.

We have examined other assignments of error relative to the giving, modifying and refusing of other instructions and the admission of certain testimony. We find them to be without merit. It is also argued that the verdict is excessive; as the case is to be reversed, this question may not again arise.

For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.

GRIFFIN SMITH, C. J., concurs.