BALDWIN *v.* CLARK.

4-3575

Opinion delivered November 12, 1934.

*Thos. B. Pryor, H. L. Ponder* and *Harry Ponder, Jr.,* for appellants.

*Tom W. Campbell,* for appellee.

MEHAFFY, J. On April 17, 1933, appellee's intestate, Heber Clark, was struck and killed by a train of the Missouri Pacific Railroad Company at the town of Higginson, White County, Arkansas. The appellee, administratrix of the estate of Heber Clark, deceased, brought suit

in the White Circuit Court for damages for the death of said Heber Clark, alleging that he was struck and killed by the negligence of the appellants and their employees.

Some time before eleven o'clock on the morning of April 17, 1933, Heber Clark drove his automobile to a point on the highway near the crossing. The highway at that place ran parallel with the railroad track. There were four tracks, all running in the general direction of north and south. After parking his car on the highway, which was on the west side of the tracks, Clark crossed over the tracks and went over to a side track to inspect a. car of crushed rock which was standing on the side track, this track being the farthest east of the four tracks. The track farthest west was the main line. A Mr. Crawford had parked his car just before Clark arrived, and had gone over to inspect the car of crushed rock. Clark parked his car just behind Crawford's car, and walked across the tracks to where the car of crushed rock was standing on the side track. Clark and Mr. Crawford had some conversation, Clark inspected the car and then started back across the tracks to his automobile. The car of crushed stone was some distance north of the depot, and some distance north of where Clark's car was parked, and a short distance north of the car of crushed stone was a berry shed on the east side of the tracks, and just north of the berry shed was a crossing. Clark, in walking back from the car of stone to his automobile, walked diagonally across the tracks facing south or southwest, and a fast freight train came from the north and struck and killed Clark. The track was straight for more than three miles, and there were no obstructions. There was a conflict in the testimony as to whether any warning was given by sounding the whistle or ringing the bell at the crossing.

Appellee's evidence tended to show that Clark was walking diagonally across the tracks, apparently oblivious to the approach of the train; that the train was running approximately 45 miles an hour and struck Clark, as one witness said, ''on the back part of his right shoulder.''

The evidence tended to show that Clark was earning from $3,000 to $4,000 a year. He was 36 years old, and left surviving him his widow and two sons, aged 16 and 12 years.

The evidence offered by appellants tended to show that the track was straight for 3½ miles; that the train was going 35 or 40 miles per hour; that it was a fast through freight. One of appellants' witnesses, a section hand, testified that he saw the man walking toward the train with his head down and said: "The man is going to walk into the train." He said it looked to him like Clark did not see the train and did not know there was one coming; that the brakes had not been applied before the train struck Clark, but they made a good deal of noise after that, and the train stopped pretty quickly.

The engineer operating the train testified in substance that north of the depot at Higginson the Rock Island track crosses the Missouri Pacific tracks, and some distance north of this crossing there is a road crossing the Missouri Pacific tracks. This road crossing is 500 or 600 feet north of the Rock Island crossing. He testified that he sounded the usual alarm for the crossing and started whistling and turned on the air bell, and continued this until the fireman came over and shook him and told him they had hit a man. He testified that there must have been five or ten seconds between the time he finished whistling for the crossing north of town, and the time when he started whistling for the crossing south of the depot; that at the speed they were going it would take approximately 1,000 feet to bring the train to a stop; that he was keeping a proper lookout down the track, and that, if a man had been coming toward the track on his side of the train and had been the same distance from the track that the berry shed was, he could not have stopped the train so as to avoid hitting him. He also testified that by the use of the emergency stop you could stop a train in about 700 feet. He did not see Clark before he was struck, and he testified that it was difficult to tell whether there is any one on the track much more than a half mile ahead. He did not see the man and did not sound any alarm blasts. There was an interval of some

5 or 10 seconds when no whistle was sounded. A train running 40 miles an hour will run about 40 feet in a second.

The fireman testified substantially the same as the engineer as to the signals, and that he was on the left-hand side of the engine, and keeping a lookout down the track. He noticed some cars on the siding but did not see anybody walking on the track. He then got down to look into the firebox, and said he was down there three or four seconds. As he raised up, he noticed two men on the car, and about that time he saw that they had struck some object, but could not tell what it was. He also testified that, if they had discovered Clark on the track as they went over the crossing north of the berry shed, it would not have been possible to stop the train before the point where they struck him at the speed they were going. He saw the object they hit about the time they struck it.

It is earnestly contended by the appellant that the evidence is not sufficient to sustain the verdict. This suit was brought under § 8568 of Crawford & Moses' Digest, which reads as follows:

"It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

The above statute was enacted in 1911, and one of the early cases construing the statute was the case of

*St. L. I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431, 155 S. W. 510, decided by this court first in 1913, and the same case was here again in 1914, and this court said in the case on the last appeal:

"The effect of our holding in the former opinion is that where proof has been introduced by the plaintiff of an injury to a person by the operation of a train under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept, then the burden is shifted to the railway company to show that such lookout was kept." *St. L. I. M. & S. Ry. Co.* v. *Gibson,* 113 Ark. 417, 168 S. W. 1129.

The undisputed evidence in this case shows that the track was straight for more than three miles, and level, and there was nothing to obstruct the view, nothing to prevent the engineer and fireman from seeing Clark on the track, if they had kept a lookout. The undisputed evidence also shows that they could see a person on the track for one-half mile if they were keeping an efficient lookout. It is true that the engineer swears that he was keeping a constant lookout, and that he did not see any one going toward the track. He was on the right side of the engine, and of course it would not be possible for him to see any one on the other side of the track, after the engine had gotten close enough to the person to obstruct the view. But certainly, when he was a half mile away and there was nothing to obstruct his view, he could have seen a person on, or approaching, the track. However, the fireman was on the left side of the engine, and he testified he was keeping a lookout, and also testified that he could have seen a person a half mile down the track; and yet each of these witnesses testifies that he did not see Clark. The fireman testified that he saw the object as they hit it, but did not know then that it was a man. The evidence of the engineer and fireman conclusively shows that the track was straight for more than three miles, and that there was nothing within that three miles that would obstruct the view, and it appears certain, if they had been keeping a proper lookout, they could and would have seen Clark before striking him.

The undisputed proof also shows that by using the emergency brake the train could have been stopped in 700 feet. If they had seen ·Clark on the track, they would have known from his conduct that he was not aware of the approach of the train, and could have exercised care and stopped the train if necessary. However, if they had seen him as far ahead as the evidence shows they could have seen him, it would probably not have been necessary to stop the train; they could have checked its speed, and could have sounded the alarm blasts to attract his attention. But they did nothing to avoid the injury. They did nothing because they say they did not see him.

The evidence was sufficient to warrant the jury in finding that the engineer and fireman should have discovered the peril of Clark in time, by the exercise of ordinary care, to have avoided the injury. If they had discovered him, they would necessarily have discovered that he was going diagonally across the tracks with his back to the train, with no indication that he knew it was approaching.

Appellant calls attention to the case of *St. L.-S. F. Ry. Co. v. Cole,* 181 Ark. 780, 27 S. W. (2d) 992, and calls attention to the fact that the court held in that case under § 8562, when injury was caused by the operation of a train, that it made a *prima facie* case of negligence. There is no contention here that there was a *prima facie* case of negligence, or that § 8562 is involved at all. Under that section, railroad companies are made responsible for all damages done or caused by the operation of a train, and this court has held many times that under that section, when the evidence shows that injury was caused by the operation of a train, a *prima facie* case is made. But we also said in the Cole case, *supra:* ''The duty of the railroad to take precautions begins when it discovers, or should have discovered, the peril of the traveler. So here the railroad company should have kept the lookout, and is chargeable with such knowledge as it would have had, had the lookout been kept; but, if the lookout had in fact been kept and appellee's presence near the track discovered, this would have imposed no duty on the railroad to stop the engine or to take other

precautions until the peril of the traveler was discovered.''

Under § 8562 we have said: ''When the evidence shows that the injury was caused by the operation of a train, the presumption is that the company operating the train was guilty of negligence, and the burden is upon such company to prove that it was not guilty of negligence.'' *St. L. S. W. Ry. Co.* v. *Vaughan,* 180 Ark. 559, 21 S. W. (2d) 971.

In discussing the lookout statute we have recently said: ''But now the company is liable if, by proper care and watchfulness, it could have discovered and avoided the danger. * * * It was the evident purpose of this act to provide a different rule of liability against a railroad company causing an injury by the operation of its trains, in case of failure to keep a lookout for persons on its track, than was prescribed by the old act, which required the same lookout to be kept, and place the burden of proof upon the railroad company in case of an injury, to establish the fact that the duty to keep a lookout had been performed. It was not intended, however, that, upon proof of the killing of a trespasser by the operation of a train, the presumption should arise that the killing was negligent and the plaintiff entitled to recover damages without showing anything further, and casting the burden of proof upon the company to show that it was not guilty of any negligence, causing the death, as declared in said instruction numbered 1.'' *Kelly* v. *DeQueen & Eastern Rd. Co.,* 174 Ark. 1000, 298 S. W. 347.

It will therefore be seen that we have distinguished § 8562 from § 8568, and that under § 8562, when injury is shown to have been caused by the operation of a train, the railroad company is presumed to be guilty of negligence. Under § 8568, where a trespasser is killed on the track, there is no presumption of negligence on the part of the railroad company, but the plaintiff must show a failure to keep a lookout, and show that if a proper lookout had been kept, the railroad company could, by the exercise of reasonable care, have avoided the injury.

Appellant argues that the uncontradicted proof shows that a lookout was being kept. The uncontradict-

ed proof also shows that, if such lookout was being kept, the engineer and fireman could have seen Clark for more than a quarter of a mile.

It is next contended that the appellee was not entitled to recover under the doctrine of discovered peril. The engineer and fireman testify very positively that they did not discover Clark's peril, and the question of discovered peril is not involved. The question is whether, by keeping an efficient lookout, they could have discovered Clark's peril in time to have avoided the injury, and there is sufficient evidence on this question to warrant the jury in finding for appellee.

We have carefully examined the instructions, and have reached the conclusion that there was no error in instructing the jury.

It is next contended that the verdict is excessive. There was a verdict for $30,000. The evidence shows that Clark was 36 years of age when killed, and had a life expectancy of 31 years. His wife was 35 years old. He had two sons, aged 16 and 12 years. The evidence shows that he was strong, healthy, active, able-bodied and industrious, and had been earning an average of $350 per month. We think there is sufficient evidence to justify the verdict, and the case is therefore affirmed.