CHICAGO R. I. & P. RY. CO., LOWDEN, TRUSTEE *v.* SCOTT, ADMR.

4-4326

Opinion delivered June 22, 1936.

*Thos. S. Buzbee, H. T. Harrison* and *A. S. Buzbee,* for appellants.

*Lawrence E. Wilson,* for appellee.

MEHAFFY, J. This suit was begun in the Ouachita Circuit Court by the appellee, administrator of the estate of Sam Woods, deceased, to recover damages for the death of Sam Woods, who was alleged to have been killed by the negligence of the appellants. The appellee alleged that Woods was a passenger on a mixed train from Craney, Arkansas, to Crossett, Arkansas.

It was alleged that as a passenger he was directed to ride in an empty box car; that after the train proceeded, and upon its arrival at Hermitage, the train did some switching, and thereafter the mangled and mutilated body of Sam Woods was found upon the switch track.

There was a jury trial, and a verdict and judgment against appellants in the sum of $500. Motion for new trial was overruled, and the case is here on appeal.

Letters of administration upon the estate of Sam Woods were introduced, and Bertha Woods testified in substance as follows: She lived at Harrell, Arkansas, and her husband's name was Sam Woods; they had two children, nine and seven years of age; Sam Woods left home the fifth day of February; he was found on the sixth at Hermitage; Sam was going to Crossett, and on the fifth of February left home to go to his cousin's Crola Strong, at Craney, and from there to Crossett; it was about nine miles to Craney; Sam had one dollar; she identified the clothes that Sam had on at the time he was found.

Levi Ellerson testified in substance that he lived at Hermitage, knew Sam Woods about ten years before his death; he saw Sam Woods body on the morning of February 6, 1935, lying on the passing track on the rail at Hermitage; he stopped and looked at Sam and went on to his work; Sam was dead; there were some cars on the passing track, and Sam's body was between two of the cars; there were other people there, but he did not know who they were; there was a highway through there, and Sam was lying north of the highway; between the highway and the station; he was on the outside rail from the main line.

Jesse Paynix testified in substance that he saw the body of Sam Woods on the morning of February 6; he was dead; there were some box cars on the side track; did not know how many, north of the highway that goes through Hermitage; something like three or four cars between his body and the highway; he was lying between two cars on the outside rail from the main track.

Alex W. Williams testified that he stayed all night at Crola Strong's, and met Sam Woods there; Sam

slept with him that night; Sam told him he was going to Crossett, and left early next morning; the train was out there when Sam got up; he did not know what became of Sam after he left the room; the train got there before Sam got up, and had started moving off when Sam left the house; there was a water tank at Craney, and the train stopped to take water; Crola Strong woke Sam up, and about the time he got ready to leave the house the train was moving off; he heard about his being dead the next evening.

Lena Strong, wife of Crola Strong, testified that Sam Woods spent the night at their house the night before he was found dead the next morning; did not know what time Sam left, but before day; the train was at Craney before Sam left the house; was starting off when he left. Her husband told Sam when he left to be careful; they heard nothing more from him until they heard he was dead.

Robert W. Meeks, the engineer, testified that between 5:30 and 5 o'clock they got to Hermitage; Hermitage is about six miles from Craney; he did not see or know of anybody getting on the train at Craney; they did some switching, and while they were doing that he was keeping a lookout; saw nobody on the track, and did not run over anybody that night.

R. C. Russell, an employee of the Rock Island, was on the local freight at the time when Sam Woods body was found; it was a little after five o'clock when they passed Hermitage; about twenty before that they had been at Craney; they took water at Craney. This witness, as conductor, was in charge of the train. They carried a big steel coach for passengers, but carried a caboose in addition to that; they did not take any passengers at Craney; did not see anybody board the train at Craney; when they got to Hermitage they did some switching, and witness had told one of his brakeman to stay in the caboose. He saw nobody at Hermitage, except the trainmen; he first found out that this boy was dead when they got to Crossett; it was his duty to make a report showing the passengers he had, and this report shows that he took on the first passenger at Hermitage.

He saw the body of Sam Woods, and it was not mangled; he was dead. This witness would not say as to how or when Sam Woods was killed.

The conductor's report was introduced in evidence.

H. W. Holdridge, a brakeman on the train, testified that he got out on the ground at Craney, but did not see anybody board the train.

Edgar Bryant, Saul Crime and W. Warren, employees of the appellant, all testified, and in substance their testimony is the same as that of the other employees of the appellant, and Warren testified that the body was not mangled.

This suit was brought and the case tried on the theory that Sam Woods was a passenger on the train; that he boarded the train at Craney. There is, however, no evidence that he boarded the train at Craney. The evidence is to the effect that the train was starting when he left the house of Strong, and he left intending to get on the train. It is shown that he had a dollar in his pocket with which to pay his fare; but the undisputed evidence is that he did not board the train as a passenger. The evidence does not show whether the dollar was in his pocket when the body was found.

There is but one question argued by appellants, and that is that the testimony was not sufficient to justify the submission of the case to the jury, and that the jury should have been directed to return a verdict in appellant's favor. Under the statute and decisions of this court, if an injury is shown by the evidence to have been caused by the running of the train, a presumption arises that the injury was caused by the negligence of the railroad company. Before this presumption can be indulged, however, there must be some evidence that the injury was caused by the operation of the train. There is no evidence in this case that there were any bruises or wounds found on the body. It is true that the appellee introduced the clothing worn by Sam Woods, and it was torn; but if Woods had been killed by the operation of a train, there would certainly have been some evidence that the train struck him.

The statute reads as follows: "All railroads which are now or may hereafter be built and operated in whole or in part in this State, shall be responsible for all damages to persons and property done or caused by the running of trains in this State." Crawford & Moses' Digest, § 8562.

The only evidence is that Sam Woods' body was found on the track. There is no evidence that he was killed by the train, and in order to hold the railroad company liable, under this statute, the evidence must show that the damages were done or caused by the running of a train. Woods might have died from any one of a number of causes. No one knows how he died.

This court has said: "It is true that no eye witness testified about the injury to the deceased, the railroad company not introducing any testimony of the operatives of its train, but the testimony adduced shows that the body of deceased was found upon the right-of-way, and within a few feet of the track of appellant with the skull crushed in such a manner as would have been the result had he have been struck by certain parts of the engine (the cylinder head or monkey-motion outside the drivers) of the train, and his shoulder likewise broken and crushed with black oil smeared upon the hair and the clothing on the shoulder, the kind of oil used in the operation of the engines of appellant, which would have brushed off the machinery when it had come in contact with the body of deceased. The jury could have found from these facts established, and the reasonable and probable inference therefrom that deceased was struck and killed by the train." *St. Louis-S. F. Ry. Co.* v. *Crick,* 182 Ark. 312, 32 S. W. (2d) 815; *Missouri P. Rd. Co.* v. *Crew,* 187 Ark. 752, 62 S. W. (2d) 25.

We also said: "Before the jury would have been justified in finding for the appellee, it must have found as a fact that the dog was killed by the train. The evidence must have shown this. It was not necessary to show by direct evidence, but the fact might be shown by circumstantial evidence." *Missouri P. Rd. Co.* v. *Hull,* 182 Ark. 873, 33 S. W. (2d) 406; *Missouri P. Rd. Co.* v. *Foltz,* 182 Ark. 941, 33 S. W. (2d) 51.

"When the evidence shows that the injury was caused by the operation of a train, the presumption is that the company operating the train was guilty of negligence, and the burden is upon such company to prove that it was not guilty of negligence." *Baldwin* v. *Clark,* 189 Ark. 1140, 76 S. W. (2d) 967; *St. Louis S. W. Ry. Co.* v. *Vaughan,* 180 Ark. 559, 21 S. W. (2d) 971; *Kelly* v. *DeQueen & Eastern Rd. Co.,* 174 Ark. 1000, 298 S. W. 347.

All of our cases hold that to recover against a railroad company, it is necessary to show by evidence, either direct or circumstantial, that the injury was caused by the operation of a train, and in this case there is no evidence from which the jury could have found that Woods was killed by the running of a train.

The trial court should, therefore, have directed a verdict in favor of appellants.

The judgment of the circuit court is reversed, and the cause dismissed.