EVANS v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY.

Opinion delivered October 26, 1908.

RAILROADS—DISCOVERED PERIL—FAILURE TO SIGNAL.—In a suit for the negligent killing of a trespasser on defendant's track, where defendant's engineer testified that he saw deceased lying asleep near the track, and thought that the train could pass him without striking him, and refrained from sounding the whistle for fear that deceased might become scared and jump on the track, it was a question for the jury to determine whether, in the emergency shown by the testimony, the engineer should have used the danger signals.

Appeal from Pope Circuit Court; *Hugh Basham,* Judge; reversed.

*U. L. Meade,* for appellant.

1. This was clearly a case for the jury. The testimony of the engineer is unreasonable and contradicted by the physical facts and other evidence. Courts and jurors are not required to accept as true the testimony of a witness, even though it is not contradicted by other witnesses, if it be contrary to reason and human experience. 79 Ark. 608; 106 S. W. (Ark.) 948; 74 Ark. 483.

2. A *prima facie* case of negligence was made out against appellee, when the killing by one of its trains was proved. Kirby's Dig. § 6773; 102 S. W. (Ark.) 700; 65 Ark. 235; 99 S. W. (Ark.) 81; 69 Ark. 380; 96 S. W. (Ark.) 616. If, after discovering the peril of deceased, appellee failed to exercise such care as an ordinarily prudent person would exercise under the circumstances to prevent the injury, it was guilty of negligence. 80 Ark. 186; 65 Ark. 433; 69 Ark. 132; 56 Ark. 599; 64 Ark. 237; 63 Ark. 184; 62 Ark. 186; *id.* 235; *id.* 245; 67 Ark. 164; 46 Ark. 513; 57 Ark. 194; 50 Ark. 478; 64 Ark. 335; 76 Ark. 10. Whether or not the engineer exercised such care was a question for the jury under the facts in this case. 57 Ark. 468; 74 Ark. 478.

*Lovick P. Miles,* for appellee.

Before appellant could recover, it was necessary for him to adduce evidence legally sufficient to warrant the conclusion that appellee wantonly, maliciously or intentionally injured deceased,

or was guilty of such negligence after discovering his peril as to make an inference of this kind justifiable. 76 Ark. 14; 57 Fed. 921. There was no evidence upon which the jury could have found that the engineer actually discovered the peril of the deceased or actually believed deceased was not in the clear. It was not sufficient that he could have discovered the peril, but it was necessary to show that the actual peril of deceased was actually discovered and appreciated, and that thereafter the negligence of the engineer was such as to amount to a wanton, malicious or intentional injury. 83 Ark. 300; 69 Ark. 383. An honest mistake cannot form the basis for a judgment where the injured party was himself guilty of contributory negligence. 36 Ark. 41; 47 Ark. 497; 45 Ark. 250; 61 Ark. 364.

HART, J. Plaintiff brought this suit as administrator of the estate of David F. Evans, deceased, and also as next of kin of said deceased, against the defendant to recover damages on account of the killing of said Evans.

The complaint alleges in substance that Evans was struck and killed by a train of the defendant on the night of July 14, 1907; that it was a starlight night, and that the track was perfectly straight, with the view unobstructed for two miles or more east of where Evans was struck and killed by the train; that he and his companion were lying asleep on the north side of the track; that after discovering him defendant's servants in charge of the locomotive negligently failed to give any danger signals or check the speed of the train, but recklessly ran into him, thereby causing his death.

The railway company answered, making a general denial, and averred that the death of Evans was caused by his own negligence. After hearing the evidence, on motion of the defendant, the court directed the jury to render a verdict for the defendant, and the case is here on appeal.

David F. Evans and T. B. Falls lived at Galla Creek in Pope County. On the night that Evans was killed, they had been to visit the sister of Falls in Knoxville, Johnson County. They were each about 20 years of age. They desired to return home that night. The night train did not stop at Knoxville, but did stop at the Junction about two and a half miles west of Knoxville. They walked toward the Junction, and, it being a

warm night, they stopped to rest. Falls went to sleep eight or ten feet from the north side of the track. Falls woke up and noticed that Evans was lying right up to the end of the ties. He told Evans to get up; that a train was likely to come along and kill him. He remembered Evans raising up. They were waiting for an east-bound train. The body of Evans was lying nearly parallel with the track, and his head was resting on the end of a tie when Falls told him to get up. His head was towards the east. The train which killed him was going west. Falls did not wake up again until the train had half way passed him. He jumped up and looked down the track and saw the engineer's head sticking out of the cab on the side he was on, looking back. Falls then began to look for Evans, but did not find him. He then went back to Knoxville. The next morning, he and the railroad agent went back and found the remains of Evans a rail or two west of where he was lying when he was hit. The track was straight 900 feet or more east of where the two boys were lying, and there was nothing to obstruct the view of the engineer. The foregoing was the version given by Falls.

George Embrey testified that he was the engineer in charge of the locomotive that killed deceased; that he was running about thirty-five miles an hour, and was keeping a lookout for people and stock on the track or right of way; that he did not discover that Evans or his companion were human beings until he was seventy-five feet from them; that he made no effort to stop the train because they were in the clear, that is to say, that the train could pass without striking them; that he did not have time to stop after he discovered that they were human beings; that he made a statement at Knoxville the next day in which he said that he saw two men lying beside the track; that he thought they were in the clear, and thought if he blew the whistle he might scare them, and they would jump on the track.

James Evans, the brother of the deceased, testified that he discovered blood and hair on the right side of the cow catcher which resembled the hair of his brother. The testimony also showed that a train composed of the number of cars of the one in question, could be stopped with safety to passengers in 200 feet, and when running forty miles an hour in 400 feet.

We are of the opinion that it was a question for the jury to

determine under the evidence whether or not the defendant railway company exercised the proper care, after discovering the dangerous situation of the deceased, to avoid injuring him. It is only where the facts are undisputed, and are such that reasonable minds may draw but one conclusion from them, that the question of negligence is one of law for the court. Of course, under the undisputed facts as disclosed by the record, no reasonable man would say that the engineer could have stopped the train in time to have saved the deceased from injury after he discovered his perilous position, but he might have given an alarm by sounding the whistle. No doubt, the engineer thought he was acting for the safety of deceased in not giving the alarm signal; for he gives as a reason for not doing so that he feared that it would cause the boy to jump towards the track, and that he was in no danger in the position in which he was when first seen. It is probable that the deceased was not awakened by the noise of the approaching train; for his companion says that he was not awakened until the train had half way passed him. If the noise of the approach of the train did not awaken him, it is evident that the engineer is mistaken in saying that he was lying clear of danger from the passing train; for he was struck by the cow catcher of the locomotive. On the other hand, if the engineer had sounded the whistle, its sharp, shrill warning might have awakened the sleeping boy, and have caused him instinctively to have rolled away from the train. The locomotives of railroad trains are equipped with bell and whistle for sounding danger signals. We are of the opinion that it was a question for the jury whether or not, under the emergency shown by the testimony, the engineer should have used them for that purpose.

This is in accord with the rule announced by the previous decisions of this court, and special reference is made to the case of the *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Evans,* 74 Ark. 407, as being more nearly applicable to the facts of this case.

The judgment is therefore reversed, and the case remanded for a new trial.

ON REHEARING.

Opinion delivered November 16, 1908.

·HART, J. Counsel for appellant urges that the case of the *St. Louis, I. M. & S. Ry. Co.* v. *Allen*, 86 Ark. 465, is conclusive of the proposition under consideration in this case. We do not think so. In that case the plaintiff alleged as his cause of action the negligence of the railroad company in failing to provide her intestate promptly with surgical attention, which resulted in his death. The court held that under the undisputed evidence he would not have recovered had he received medical attention sooner, and hence that the delay in procuring it was not the proximate cause of his death. This was tantamount to saying that the proximate cause of his death was the fact that he was struck by the train of the railway company. So in the present case Evans was run over by appellant's railway train, and that was the proximate cause of his death. He was a trespasser, and, as was stated in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Raines*, 86 Ark. 306, the servants of the railway company owed him no duty except to exercise ordinary care not to injure him after discovering his dangerous position. The court said: "The question is not whether defendant's servants could have discovered the perilous position of the man, but whether they did discover it in time to have avoided the injury by the exercise of care. And the burden is on the party alleging negligence in this respect to prove it."

In that case, as in this, after the man was discovered on the track, the train was so close to him that the engineer could not avoid striking him by stopping the train. There was nothing else he could do except to sound the whistle, which was immediately done. These facts were established by the undisputed evidence. Hence the court held that reasonable minds could come to but one conclusion, and that was that there was no negligence on the part of the servants of the railway company.

In the present case the engineer, after he discovered deceased's dangerous position, did not ring the bell or sound the whistle. The failure of the engineer to use the instrumentalities placed at his hands for the purpose of warning persons on the railroad track of the near approach of a train created a condi-

tion from which reasonable minds might draw different conclusions. In other words, the jury might have found negligence from his failure to give the usual danger signals.

We are of the opinion that the testimony was sufficient to submit the question of negligence in this respect to the jury.

The motion for a rehearing is therefore denied.