ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.*

CHAMPION.

Opinion delivered May 19, 1913.

1. RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.—Under the lookout statute (Acts of Ark., 1911, p. 275), if a person is killed while on the tracks of a railway, by the running of a train, and such person would not have been killed had the lookout required been kept, the statute makes such failure to keep a lookout, the proximate cause of the death, no matter by what cause or under what conditions the party killed may have been upon the railway tracks. Deceased's being upon the track, whether by accident, negligence or whatever cause, is but a mere incident to the killing, and not the proximate cause thereof. (Page 331.)

2. APPEAL AND ERROR—INSTRUCTIONS—HARMLESS ERROR.—Where the court erroneously submitted to the jury the question of proximate cause, when that was not an issue in the case, the error was not prejudicial to the defendant. (Page 333.)

3. RAILROADS—INSTRUCTIONS—INJURY TO PERSON ON TRACK—PROXIMATE CAUSE.—Where deceased was killed on a railway track by the operation of a train, it is not error, under Statutes of 1911, p. 275, for the court to refuse to instruct the jury on the point that the proximate cause of the killing was the fact that deceased was knocked down on the track by another boy. (Page 334.)

4. RAILROADS—INJURY TO PERSON ON TRACK—FAILURE TO KEEP LOOKOUT.—When deceased was killed by a train while on the track of the railway company, the issue in the case under the lookout statute, is whether defendant failed to keep the lookout required, and not the contributory negligence of deceased. (Page 334.)

5. RAILROADS—INJURY TO PERSON ON TRACK—NEGLIGENCE—QUESTION FOR JURY.—Where deceased was killed by being struck by freight cars "kicked" down the track, and there was no one on the cars, the question of whether a proper lookout was kept by employees of defendant was properly submitted to the jury, and whether, if a

proper lookout were kept, the perilous position of deceased could have been discovered in time, by the exercise of ordinary care, to have avoided killing him.   (Page 334.)

6.  RAILROADS—DUTY TO KEEP LOOKOUT.—The act of 1911, p. 275, contemplates the keeping of a lookout commensurate with the danger to be apprehended and avoided.  If the engineer and fireman can not keep a proper lookout with reference to moving cars, then there must be other employees so situated that they will be able to make the lookout effective for the purpose of preventing injury to persons and property on the tracks of railways by the running of trains.  (Page 335.)

7.  RAILROADS—INJURY TO PERSON ON TRACK—LOOKOUT—AVOIDABLE INJURY—QUESTION FOR JURY.—Where deceased was killed by being struck by freight cars "kicked" down the track, it is a question for the jury whether, if the lookout required by act of 1911, p. 275, had been kept, the peril of the deceased could have been discovered in time to have been avoided.  (Page 336.)

8.  RAILROADS—DEATH—CONSCIOUS SUFFERING—QUESTION FOR JURY.—Where a minor is killed by a railway, on its track, under the evidence, *held*, that the question of conscious suffering was for the jury.  (Page 336.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans*, Judge; affirmed.

STATEMENT BY THE COURT.

These suits were instituted by the appellee—one in his own right, and the other, as administrator of the estate of Charles Champion—to recover damages for the loss by appellee of the services of his minor child, and for the benefit of the estate of the child.  The causes were consolidated and tried by a jury, that returned a verdict in favor of the appellee, in his own right, in the sum of one thousand dollars ($1,000), and for the benefit of the estate, in the sum of two hundred dollars ($200).

The negligence set up in the complaints was the same, and was to the effect that the appellant, while moving its cars and locomotives on a street in Fayetteville, negligently permitted one of its cars to run over Charles Champion, causing his death.  The complaint alleged that Charles Champion, at the time, was a pedestrian at the street crossing, and that appellant permitted its cars to approach the public crossing, without having a locomotive attached or coupled to them, so as to govern and

control the momentum of the cars; that it failed to cause a whistle to be sounded or the bell to be rung before the cars reached the crossing; that it neglected to keep a constant lookout for persons on its tracks while the cars were approaching the crossing; that if the lookout had been kept, the peril of Charles Champion would have been discovered in time to have prevented his death, by the exercise of ordinary care on the part of appellant; that after Charles Champion had been knocked down by the car, and before he had been so injured as to cause his death, and while he was under the car, the appellant, knowing that he was under the cars and knowing that he would be killed if the speed of the cars was not stopped or arrested, negligently failed to exercise ordinary care to reduce the speed of the cars or stop the same, thereby causing the death of Charles Champion.

The complaint for the benefit of the estate alleged that Charles Champion, after being run over and injured, suffered greatly for about thirty minutes. The complaint for the benefit of the appellee in his own right, alleged that the services of his child, who was six years of age at the time of his death, were of the value of ten dollars per month to appellee.

The facts are substantially as follows:

The main line track of appellant, in the city of Fayetteville, runs north and south. Dickson street runs east and west. Appellee had his confectionery store close to the appellant's main line track and west of the same, on the north side of Dickson street. Appellant had three or four side tracks east of its main line track and east of the depot. Two of the tracks were laid in West street, that runs north and south and across Dickson street. Dickson street is the main thoroughfare from the depot to the business part of the town. Fayetteville has a population of five or six thousand. The switch tracks crossing Dickson street run parallel to the main line track. The appellee's six-year-old son and companion, a somewhat larger boy, were running across the track, when the larger boy ran against the son of appel-

lee and knocked him down on the track. The two little boys, at the time, were going in opposite directions. Two cars coupled together were going south down West street and were at the time crossing Dickson street. There was no engine attached to the cars. The cars were running with about enough speed to put them over the street. They were almost coming to a stop when they ran over the appellee's son and killed him. The cars were being "kicked" across the street and were only given barely enough force to start them moving. They were moving very slowly—three or four miles an hour. There was no brakeman on the top of the cars. The cars had been separated from the engine. If the engine had been attached, the cars would have stopped in a short distance. They were not making a flying switch, just dropping the cars, which was drawing the pin and letting the cars roll for the purpose of shifting the cars from one track to the other. The car was some three or five feet from the boy when he fell. The first trucks passed over him without killing him. He scrambled to his hands and knees after the first trucks passed over him and the rear trucks struck him and cut him through, about the point of the shoulders. He died instantly. At the time the wheel ran over him, he was about ten feet from the sidewalk, south of it. It was the hind trucks of the first car that passed over his body. The death of appellee's son was caused on the 18th day of May, 1912.

*W. F. Evans* and *B. R. Davidson,* for appellant.

1.  Where two boys left the sidewalk of a street and attempted to cross a railroad track by running around in front of a moving car, and, when in the middle of the track and in front of and in immediate proximity to the car, one boy knocks the other down and the latter is run over and killed, the proximate cause of the injury is the one boy's knocking the other down. 9 S. W. 793; 204 Pa. St. 568; 21 S. E. 571; 69 N. E. 653; 75 Fed. 811; 124 Fed. 113; 144 Fed. 605; 94 U. S. 469-475; 86 Ark. 289; 91 Ark. 260.

2.  In view of the undisputed evidence that the boys

knew that the car was moving across the street and attempted to run around in front of it, it was error to submit to the jury the question of negligence in failing to give signals for the crossing.   63 Ark. 177; 33 S. W. 396; 56 S. W. 1; 37 S. W. 119; 79 Pa. 873; 110 Am. St. Rep. 29; 56 So. 790; 146 S. W. 790.

3.   The failure to keep a lookout was not the proximate cause of the injury.   The boys ran so suddenly before the moving car that a lookout could avail nothing, and any failure to keep a lookout could not be the proximate cause of the injury.   84 S. W. 1049; Fed. Cases, No. 13358, 4 Hughes, 157; 50 S. W. 227.

4.   Where the facts are undisputed, the question of negligence is for the court.   86 Ark. 289.

5.   The testimony did not warrant submitting to the jury the issue of negligence after discovered peril.   77 S. W. 272; 50 S. W. 227; 16 S. W. 125; 52 N. E. 1013.

6.   The testimony did not warrant submitting the second cause of action to the jury.   The boy was killed instantly.   No suffering whatever was shown.   The administrator could recover nothing except what the boy himself could have recovered for pain and suffering endured after the injury up to the time of his death, and the pain and suffering, if any, which he endured was contemporaneous with, and inseparable from, the death.   56 Fed. 248; 117 Mich. 332; 145 U. S. 335; 68 Ark. 4; 101 Ark. 327.

*Sam R. Chew,* for appellee.

1.   Under the facts developed in evidence, appellant is liable, notwithstanding any negligence on the part of the deceased.   Acts 1912, page 275; 78 Ark. 28; 80 Ark. 528.

Had the lookout been kept as the law requires, the car could have been stopped before it struck deceased. A slight effort would have stopped it.   The facts bring the case within the principle of discovered peril announced in *Railway* v. *Hill,* 74 Ark. 482.

2.   The court's instructions covered the questions of contributory negligence of the child, the negligence

of the father, negligence of the appellant and the proxi-
mate cause of the injury, which were all the questions
raised by the proof, and the jury's determination of them
adverse to appellant, being supported by ample evidence,
will not be disturbed.

3. The appellant was under the duty not only to
keep a constant lookout for persons upon this street
crossing but also to ring a bell or blow a whistle for a
distance of eighty rods back and to continue it until the
crossing was passed. Injury to the deceased was one of
the naturally to be expected consequences that would
result from appellant's negligence in failing to keep a
lookout for persons and property. 69 Ark. 130. And
such negligence was the proximate cause of the injury.
67 Ark. 47; 33 Ark. 350. See also 53 Ark. 201; 75 Ark.
133; 66 Ark. 363; 75 Ill. 96; 27 Fla. 157.

4. The proof shows that the boy lived some appre-
ciable time after being knocked down before he was killed
by the rear trucks of the car. The verdict in favor of
the administrator is not excessive. 78 Ark. 100; 39
Ark. 491.

Wood, J. The appellant contends that the proxi-
mate cause of the death of Charles Champion was the
fact of his being knocked down on the track by his com-
panion running into him, when he was in front of the
moving car. On this question, the court instructed the
jury, at the instance of appellant, as follows:

"If you find that a child ran into the deceased child
and knocked him down on the track, and, without the in-
tervention of this act, that the result would not have fol-
lowed; and you further find that men of ordinary care
and prudence would not, in switching, anticipate such
an occurrence, then the act of the boy knocking him down
would be the proximate cause."

The instruction, given at the instance of appellant,
was certainly as favorable to it as it could expect, and it
has no right to complain. For under the lookout stat-
ute of May 26, 1911, enacted before the injury herein
complained of, no matter what may have caused the

unfortunate predicament of young Champion, if the employees of the appellant in charge of its train, by keeping the lookout, could have discovered his peril in time to have prevented his injury, by the exercise of ordinary care, then appellant is liable. See Acts of Arkansas, 1911, page 275; *Railway* v. *Lindley*, 151 S. W. 246; *St. Louis, I. M. & S. Ry. Co.* v. *Gibson*, 107 Ark. 431, 155 S. W. 510.

The child could not have been in a more perilous position, by reason of having been knocked down on the track, than he would have been had he deliberately placed himself in that position, and yet even though he might have voluntarily assumed the dangerous situation in front of the moving cars, still the railroad company, under the above statute, would be liable for his death, if by keeping the lookout which the statute requires it could have discovered his peril in time to have avoided killing him by the exercise of ordinary care. In other words, under the lookout statute, where the injury complained of could have been avoided by keeping the lookout therein prescribed, then the failure to keep such lookout, resulting in the injury, is the proximate cause of such injury, no matter what may be the causes by which the party injured has been placed upon the track. The intention of the Legislature was to make railway companies absolutely liable for the killing or injuring of persons on their tracks, where such killing or injuring could have been avoided by keeping the constant lookout which the statute requires. The effect of the statute in the case of killing of persons on a railway track by the running of trains is to make the failure to keep the lookout, which the statute prescribes, the proximate cause of such killing, where, if such lookout had been kept, the perilous situation would have been discovered in time to have avoided the killing.

Therefore, under the statute, in suits for damages against railways, for the killing of a person on their tracks by the running of trains, where the negligence alleged is a failure to keep the lookout, the issue is as to whether or not the company was negligent as alleged,

and not whether such negligence was the proximate cause of the death, for, as we have stated, if the person was killed while on the tracks of the railway, by the running of trains, and such person would not have been killed had the lookout required been kept, then the law makes such failure to keep the lookout the proximate cause of the death, no matter by what cause or under what conditions the party killed may have been upon the railway tracks. The being upon the railway tracks, whether by accident, through negligence, or from whatever cause, would be but a mere condition or incident to the killing and not the proximate cause thereof.

The court erred in submitting to the jury the question as to whether or not the alleged negligence of appellant in failing to keep the lookout required by the statute was the proximate cause of the death of Charles Champion. But the error was not prejudicial to appellant.

It follows, therefore, that the court did not err in refusing appellant's prayers for instructions to the effect that the evidence was not sufficient to show that the defendant had been guilty of any negligence, which was the proximate cause of the injury, and that the proximate cause of the injury, under the evidence, was the boys running together and one being knocked down upon the railroad track.

The appellant also contends that the court erred in submitting to the jury the question of the alleged negligence of the company in failing to give signals on approaching the crossing. The court, among other things, told the jury that one of the grounds of negligence alleged was the failure of appellant to ring the bell or sound the whistle, and that if this ground was proved, and was the proximate cause of the death of the child, that they should find for appellee, unless contributory negligence barred recovery. But in another instruction, given at the request of appellant, the court told the jury that if the child knew that the car was moving and went in front of the car, then a failure to ring the bell or

sound the whistle should not be considered, because in such case the failure to ring the bell or sound the whistle would not be the proximate cause of the injury. We are of the opinion that under the undisputed evidence, the failure on the part of the appellant to ring the bell or sound the whistle could not have been the proximate cause of the injury, and the court might have so told the jury in so many words. But when the instructions on this issue are considered together, there was no prejudicial error in the instructions. Indeed, the instructions on this issue are more favorable to appellant than they should have been, because in these instructions the court virtually told the jury that contributory negligence would bar recovery, whereas, such is not the law, if the killing was caused by the failure to keep the lookout required by the statute.

Appellant contends that there was no evidence to warrant the court in submitting to the jury the issue as to whether the death of Charles Champion was caused by the alleged failure on the part of the employees of appellant to keep the constant lookout required. But we are of the opinion that this was a question for the jury under the evidence, and that it was submitted under instructions free from error. Indeed, the instructions in this respect were more favorable to appellant than the law warranted. The testimony shows that the train crew, who were handling appellant's cars at the time, were not in position to see the little boy, after he went in front of the cars. There was a curve which prevented the engineer and fireman from seeing; and the switchman, also, who uncoupled the car, was not in a position to see. The watchman, whose duty it was to guard the crossing and to prevent accidents as far as possible, was too far away to render efficient service in preventing this injury. There was no one on top of the cars to keep a lookout for travellers, who might be in danger of such cars, and to stop them in cases of emergency. These cars, in other words, were uncoupled and left to roll without any one being on them to sound a warning or to

arrest their progress, under exigencies calling for such action on the part of the company. The street upon which young Champion was killed was the main thoroughfare leading from the depot to the principal business part of the city, and was constantly travelled, and it was the duty of the appellant to anticipate the necessity of being able to arrest or stop the progress of its cars, to prevent their coming in contact with any pedestrian using the street at any time. In *Inabnett* v. *St. L., I. M. & S. Ry. Co.,* 69 Ark. 130, we said:

"The duty of railroads is to exercise reasonable and ordinary care to observe travellers about to cross the railroad upon the highway. Here the travellers have the right to be and they must be expected to be constantly passing. They are ever present, so to speak, and the railroad employees must exercise that diligence which the law requires to observe them. The care and skill to be reasonable, must be proportioned to the danger and multiplied chances of injury."

The law embodied in the lookout statute contemplates that an efficient lookout, commensurate with the danger to be apprehended and avoided, shall be kept. *St. L. S. W. Ry. Co.* v. *Russell,* 64 Ark. 239. If this can not be done by the engineer and fireman, then there must be other employees so situated with reference to the moving cars that they will be able to make the lookout effective, for the purpose of preventing injury to persons and property, on the tracks of railways by the running of trains.

Under the evidence adduced, it was for the jury to say whether or not appellant was keeping the lookout required by the statute. It was also a question for the jury as to whether or not, if this lookout had been kept, the perilous position of young Champion could have been discovered in time, by the exercise of ordinary care, to have avoided killing him.

There was testimony tending to prove that the cars were running very slowly. One witness said: "They were running two or three or four miles an hour, at the

time they struck the child." The car must have been "three or four feet from the child at the time he fell on the track." Another witness said: "When the car hit him, it turned him over on his back. It kind o' jogged and almost stopped. If a fellow had been there with a broomstick and presence of mind enough to use it he could have stopped the car. They were not going with any speed at all—just enough to take them across."

There was testimony tending to show that the first pair of trucks passed over the little boy without killing him, and, that after the trucks passed over him, "he tried to get out and the rods under the car hit him and knocked him back down toward the east side of the track."

Now, if there had been some one on top of the cars to have kept a lookout for pedestrians on the street at the crossing, and to have stopped or checked the speed of the cars, in cases of emergency, the deplorable killing of this child might have been avoided. At least, it was a question for the jury.

There was some testimony from which the jury might have found that there was conscious suffering on the part of the child from the time he passed under the car until he was run over by the hind trucks and instantly killed. That also was a jury question.

Upon the whole record, we find no prejudicial error. The judgment is therefore affirmed.