ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, THOMPSON, TRUSTEE *v.* THURMAN.

4-8590                                   213 S. W. 2d 362

Opinion delivered July 5, 1948.

Rehearing denied October 4, 1948.

*E. G. Nahler, E. L. Westbrooke, Jr.,* and *E. L. West-brooke,* for appellant.

*C. M. Buck* and *J. G. Sudbury,* for appellee.

Ed. F. McFaddin, Justice.　Vennie Thurman, a woman 34 years of age, was struck by a train of the appellant, and subsequently died. This action was prosecuted by appellee, as her administrator, to recover damages for the benefit of the estate, the husband, and the next of kin. From a verdict and judgment allowing such recovery, there is this appeal presenting, *inter alia,* the issues hereinafter discussed.

The evidence showed that the appellant operated a train known as "the Moose,"[1] running from Jonesboro to Blytheville on the Jonesboro, Lake City & Eastern railroad track. The "Moose" entered Blytheville from the west, and proceeded east until reaching a switch known and posted as "West Bly." Then the train proceeded southerly on a curved track, and away from the said J. L. C. & E. track, which continued due east. There was a footpath along the south side of the J. L. C. & E. track as it entered Blytheville, and the footpath continued on the southeast side of the curved track after the latter left the straight track at West Bly. This footpath was frequently and commonly used by the public. The deceased lived in the west part of Blytheville, and on the morning of December 24, 1946, she started along the footpath to the business district of the city; and was struck and run over by the train at a point on the curved track several hundred feet from the said West Bly switch. She was found in an unconscious condition in the footpath on the southeast side of the said curve, and her severed leg was alongside the track.

---

[1] "The Moose" consisted of a motor-operated passenger car with an ordinary combination mail-express car attached to the rear.

The allegations on which the plaintiff sought to recover were that the employees [2] of the railroad company: (1) failed to keep a lookout as required by law; (2) operated the train at an excessive rate of speed; (3) failed to give the statutory signals; and (4) failed to use ordinary care to prevent injuring the deceased after discovering her peril, or after her peril should have been discovered with the exercise of ordinary care. We now consider the evidence relating to each of these four allegations of negligence.

I. *Failure to Keep a Lookout.* The statute (§ 11144, Pope's Digest) requires the railroad company to keep a lookout; and says: ''The burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed.''

To fulfill the duty imposed by this statute, the railroad company offered testimony of the engineer Hamby that he did keep the lookout. There was no substantial evidence to the contrary. So we hold, under the authority of *St. L.-S. F. Ry. Co.* v. *Williams,* 180 Ark. 413, 21 S. W. 2d 611, that the railroad offered testimony—not affirmatively contradicted—to the effect that the lookout was kept.

II. *Excessive Speed of the Train.* Appellant introduced ordinance No. 27 of the City of Blytheville, making it unlawful for any train to run in the city at a speed greater than six miles per hour. We need not discuss the ordinance, or whether its violation would be negligence, because the evidence here fails to show that the speed of the train had any causal connection with the injury. In *Garner* v. *Mo. Pac. R. Co.,* 210 Ark. 214, 195 S. W. 2d 39, we discussed a situation where, as here, there was no showing that the speed of the train had any causal connection with the injury. What was said in that case is apropos here.

III. *Failure to Give the Statutory Signals.* Section 11135, Pope's Digest, is the applicable statute. Appel-

---

[2] The engineer of the train was Harry Hamby. He was a defendant, and judgment was rendered against him also. In view of the result here reached, it is unnecessary to consider the separate assignments presented by him.

lee's own witness—Handy Smith—testified that the bell was ringing continuously, and that the whistle sounded for each crossing. In fact, all the evidence shows that the statutory signals were given; so the plaintiff made no case on this allegation of negligence.

IV. *Discovered Peril.* This is the allegation to the effect that the railroad company failed to exercise ordinary care to prevent injuring the deceased after discovering her peril, or after her peril should have been discovered with the exercise of ordinary care. We find no substantial evidence for the plaintiff in support of this allegation. Only two witnesses testified on this point. One was the engineer, Harry Hamby, who testified that his position as motorman was at the front of the train; that he had a good view; that he saw appellant walking in the path alongside the track when the train was over 400 feet away from the deceased; that the train gave the signals, and deceased looked back; that she walked along in the path; that when the train was so close to her that it could not be stopped, she walked in front of the train; that he did all he could to stop the train; and that the next thing he knew, the train struck deceased. Certainly, the testimony of Harry Hamby shows no negligence on the part of the railroad company or any of its employees.

The only other witness who saw the deceased on the railroad right-of-way prior to her injury was the plaintiff's witness, Handy Smith. He testified that he was at his brother's house located north of the railroad track, and "about two blocks" west of the curve; that his brother's garden was south of (and across) the railroad tracks, and the witness was anxious to keep a stray horse out of the garden; that witness made two trips from the house to the garden; that on his first trip he saw the deceased walking toward Blytheville, and she was in the path on the south side of the track; that this was a few minutes before the train arrived; that on his second trip to the garden, witness saw the train pass his brother's house, and witness saw the deceased walking in the path on the southeast side of the curve, which curve the train had not then reached. Witness said the train "blocked

his view'' of the deceased, and then he realized the train was stopping; that he went to where the deceased was lying; that she was in the path on the southeast side of the curve and her severed leg was ''inside the south hand rail of the line the train was on''; that the rear of the train was stopped less than 100 feet from the woman's body. The witness assisted in moving the deceased to the ambulance; she died in a hospital several hours later without making any statement—so far as the record here shows—as to how she came to be injured.

The testimony of the witness, Handy Smith, fails to show that the railroad was guilty of any actionable negligence in this matter of discovered peril. The deceased was in the pathway when the witness last saw her before she was injured; and at that time and place she was not in a perilous position. How or when she left the pathway and was injured by the train is not shown by this witness. His testimony, therefore, leaves only conjecture as to (a) whether the deceased became confused and started across the track; or (b) whether her clothing caught on the train and pulled her under it; or (c) just what did happen. Verdicts cannot be founded on conjecture; negligence must be proved. See *Glidewell* v. *Arkhola Sand & Gravel Co.*, 212 Ark. 838, 208 S. W. 2d 4, and cases there cited.

We find no substantial evidence showing that the railroad company or its employees were guilty of any negligence; and in the absence of such proof, the judgment of the lower court must be reversed, and the cause dismissed. It is so ordered.