Edna STOCKTON, Administratrix of the Estate of G. W. Stockton, Respondent,

v.

MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.

No. 47322.

Supreme Court of Missouri,
Division No. 2.
July 13, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 14, 1959.

Hilary A. Bush, Fred A. Murdock, Johnson, Lucas, Bush & Gibson, Kansas City, for appellant.

Sam R. Gardner, Jo B. Gardner, Monett, for respondent (plaintiff).

BARRETT, Commissioner.

This is an action by an administratrix against the Missouri Pacific Railroad Company for the negligent killing of her husband, Grady W. Stockton, in North Little Rock, Arkansas, on August 16, 1957. A jury found the issues in favor of the plaintiff, fixed her damages at $20,000, and the railroad has appealed. The theory of the action is discovered peril under the Arkansas lookout statute: "It shall be the duty of all persons running trains in this State upon any railroad, to keep a constant lookout for persons and property upon the track of any and all railroads, * * *. Notwithstanding the contributory negligence of the person injured, where if such lookout had been kept, the employee or employees in charge of such train of such company, could have discovered the peril of the person injured in time to have prevented the injury, by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed." 6B 1947 Ark.S.A., Sec. 73–1002; St. Louis & S. F. R. Co. v. Champion, 108 Ark. 326, 157 S.W. 408; Thrower v. Henwood, 351 Mo. 663, 173 S.W.2d 861. Several collateral if not irrelevant matters are argued but there is in point of fact no dispute between the parties as to the applicable substantive law. The sole question for determination is whether the facts and circumstances adduced, more particularly the circumstantial evidence (St. Louis-S. F. Ry. Co. v. Crick, 182 Ark. 312, 32 S.W.2d 815), are of sufficient probative force to support the necessary inferences and findings that Grady was in peril of being struck by the appellant's train, that his peril was or should have been discovered, and that thereafter the train crew could have signaled or stopped and thus have avoided hitting him, and, finally, whether he was in fact struck and killed by the train, as under the statute a verdict may not be based on mere conjecture and speculation. Compare Missouri Pac. R. Co. v. Manion, 196 Ark. 981, 120 S.W.2d 715, and Missouri Pac. R. Co. v. Campbell, 200 Ark. 1056, 143 S.W.2d 9, St. Louis-S. F. Ry. Co. v. Thurman, 213 Ark. 840, 213 S.W.2d 362.

If Grady was in peril within the meaning of the statute and if he was in fact struck by the train, it is not seriously contended that the evidence does not support the finding of negligence in failure to timely signal or stop the train. Missouri Pac. R. Co. v. Moore, 209 Ark. 1037, 193 S.W.2d 657; St. Louis-S. F. Ry. Co. v. Crick, supra. The essentially meritorious and determinative problem is whether the evidence hereinafter detailed reasonably permits the inference and finding that he was struck by the train; the railroad contends that it appears and should be declared as a matter of law that the evidence is wholly insufficient in this important and vital respect.

The railroad's double main-line tracks run through North Little Rock from north to south, and between 18th Street and 13th Street, almost straight for 1¼ miles, they are laid through a clay and rock-banked trench or cut. There is a street crossing at 18th Street and another at 13th Street and at 14th Street there is a viaduct or overpass, but the other streets, particularly 17th Street, do not intersect or cross

208

the tracks, and at 17th Street there are wooden barricades at the ends of the street. There are, however, well-defined paths up the embankments where the streets do not cross and the public, particularly people living in the vicinity, has used the paths as "short cuts" for many years. Missouri Pac. R. Co. v. Moore, 209 Ark., loc. cit. 1043, 193 S.W.2d, loc. cit. 660. Grady's daughter, Mrs. Hughes, lived for years in property abutting the railroad right of way near 16th Street and Grady lived about a block west at 1408 Sycamore Street. Just beyond the 17th Street barricade, along the west track, there is a fifteen-mile-an-hour "slow sign" and beyond the slow sign there is a whistle signal for the 13th Street crossing. Grady's body was found on the railroad right of way, at 11:20 p. m. by a patrolman, just south of 17th Street, and if he was struck and killed by a train it was passenger train number 125 which crossed 18th Street at 10:45. The consist of the train was a diesel locomotive, two baggage cars, two coaches and a pullman car, the pullman coach being the last car in the train.

Grady Stockton was a Missouri Pacific Railroad fireman on through freight but was not on duty on August 16th. He left home on foot about 7 o'clock. He was fifty-one years old, in good health and in good humor and had no enemies or troublesome personal problems. He did not carry large sums of money, never more than $10, and after his death there was $1.90 in change in his trousers' pocket. After leaving home Grady was first seen between 9 and 10 o'clock, by several friends and fellow workmen, at the Southern Grill at "18th and Railroad"; he was visiting and talking about his new automobile and railroading but he was not drinking. He was next seen at 10:20 o'clock by an old engineer acquaintance in the Terminal Cafe, about a block north of the hostler's shanty but sixteen blocks from the Southern Grill. He was with another man known to the engineer as a "westend" railroad man although he did not know his name. Grady and the westend railroader left the Terminal Cafe

and Grady was not again seen by any one who recognized him until his body was found on the right of way.

Grady's body was found lying ten or fifteen feet from the "slow sign" on the right or west side of the right of way, just a little south of 17th Street. One witness, a part-time city patrolman and brakeman, said that the body was lying face down, at an angle of approximately forty-five degrees, the head twisted out, the right arm parallel with the right leg, palm up. The right leg was bent at the knee, the left leg was extended and was the part of his body nearest the ties, about six inches from the end of the ties with his head about five feet from the ties. Grady was dead when these witnesses arrived but his body was not yet stiff. These witnesses observed that there were several lacerations or "blows" on his head, his right hand was mangled, the back of his shirt over the left shoulder was torn and beneath the torn shirt his skin had been scuffed. One witness said that his right ear was almost torn off. There was no autopsy but the coroner, a doctor, said that death was the result of a "fractured skull with a brain injury," the major part of the injury was "on the right side, posteriorly, in the occipital region, back in here." There being these particular injuries to Grady's body the case is unlike Lowden v. Scott, 192 Ark. 887, 95 S.W.2d 630, in which there were no wounds or marks on the body found alongside the railroad tracks.

Immediately north of the body the ballast was disturbed some, "moved around as if something had struck it." It had rained earlier in the evening and the right of way and the paths were muddy and Grady's shoes were muddy. There were muddy footprints along the west side of the track, and there were muddy tracks on the ends of some of the ties, the tracks ended just north of the point where the body was found. Another witness who did not see the body, it had been removed when he arrived with a railroad claim agent and another person, said that he observed the mud-

dy footprints on the ends of the ties but, of course, no one knew how the tracks and footprints got there. In addition, this witness found a partially filled package of Camel cigarettes and a penny box of matches about forty feet south of the "whistle" signal, they were lying "half way between the ditch and the end of the ties," sixteen to twenty inches from the west rail. Grady normally smoked Prince Albert tobacco and ·rolled his own cigarettes but when he did not roll his own he smoked Camel cigarettes. In addition to the $1.90 in change the only other article returned to Mrs. Stockton was Grady's glasses.

■ The respondent points to numerous details that he did not know or could not testify to and assails, factitiously, the testimony of Mr. Lamberson, the engineer on train 125. The engineer did not testify in person, the respondent took and introduced his deposition and he was in no sense a hostile witness and the respondent did not claim surprise. It is not necessary to say, however, whether the court erred in striking two or three of his answers, at respondent's behest, as conclusions (McCormick, Evidence, Sec. 11, p. 21; Brawley v. Esterly, Mo., 267 S.W.2d 655, 662), on other occasions the witness testified to the stricken matters and so it may not be said that the court erred in a matter materially affecting the merits of the action. 5A C.J.S. Appeal & Error §§ 1748–1749, pp. 1089–1095; V.A.M.S. § 512.160, subd. 2. Incidentally, the fireman on train 125 was present at the trial, probably brought to Nevada by the appellant and subpoenaed by the respondent in the course of the trial, but he was not called as a witness by either of the parties.

Mr. Lamberson says that his train approached the 18th Street crossing at a speed of thirty miles an hour and that the bell was ringing and the whistle sounded for that crossing. There were no more signals until after the train had passed the body on the right of way and approached the next street crossing, 13th Street. The headlights on the locomotive were on and Mr. Lamberson saw and was aware of the fifteen-mile-an-hour "slow board" and the "whistling post" and he made a service application of the brakes fifty or sixty feet beyond the slow board sign. He was looking down the track and three or four car lengths (75 feet is an average car length, he said) ahead he saw "a bundle lying there, looked like it might be a roll of paper or something outside the track." He continued looking at the object and it did not move and "about a car length from it I discovered that it was a person lying there beside the track." It was his opinion that the body was "anywhere from about four foot, a little beyond the rail." He said, "it was far enough from the track to see that I wasn't going to hit it and, therefore, I didn't put no brakes on the train whatsoever, made no attempt to stop the train." He kept looking at the body to see whether it would move and what it would do, the locomotive and probably three coaches had passed the body when the fireman came over and stood in the door and he could not see the body as the fifth and last coach passed it. Specifically he said, "I would imagine about one car" had not passed the body when he could no longer see it and up to that point the train had completely passed the body. He radioed the position of the body to the yardmaster and estimated its location as near 16th Street.

■■ Since, when the train was seventy-five feet away, the engineer recognized the object on the right of way as a human being we are not concerned with whether he should have timely discovered that the object was a person. Annotation 70 A.L.R. 1116. It does not appear whether the locomotive and coaches were examined and whether there was human hair or blood on any part of the train. Compare St. Louis-S. F. Ry. Co. v. Hill, 197 Ark. 53, 121 S.W. 2d 869. Since, in Arkansas, the lookout statute imposes additional duties on the railroad and its train crews upon the discovery of a person on or near its tracks, and the body being injured as Grady's was and

there being no evidence that he was killed in some other manner, it is a permissible inference that he was struck and killed by a train, even the last coach on the train. Annotation 40 A.L.R.2d 881, 889. In the Hill case and in Missouri Pacific R. Co. v. Thomas, 197 Ark. 565, 124 S.W.2d 820, 822, the deceased persons were walking not more than four feet from the rails and it was held that it could not be said as a matter of law that they were in a place of safety or that there was no duty on the engineers to signal; "it was a question for the jury to say whether or not the deceased walking not more than four feet from the rail, as appellant contends, was in a place of safety or one of peril." In the Hill case there was an eyewitness to the fact that the train struck the plaintiff.

In Evans v. St. Louis, I. M. & S. Ry. Co., 87 Ark. 628, 113 S.W. 642, 643, Evans and Falls, intending to catch a train at a junction, stopped to rest and fell asleep along the right of way, Falls being eight or ten feet from the track and Evans "lying right up to the end of the ties." Falls was awakened when the train "had half way passed him" and he looked down the track and could see the engineer's head sticking out of the cab, "looking back." After the train had passed Falls was unable to find Evans and the next day his mangled body was found the distance of a rail or two west of the place where he had been lying. The train was traveling at a speed of thirty-five miles an hour, the engineer was maintaining a lookout and said that he did not discover that the objects on the right of way were human beings until he was seventy-five feet away and that he then made no effort to stop and did not signal because he thought a signal might frighten them and "they would jump on the track." It was held in that case that "it was a question for the jury to determine under the evidence whether or not the defendant railway company exercised the proper care after discovering the dangerous situation of the deceased to avoid injuring him." In St. Louis Southwestern Ry. Co. v. Thomp-

son, 89 Ark. 496, 117 S.W. 541, 542, an elderly lady from Stamps, wearing a bonnet, was walking down a path next to the railroad ties, the engineer, with the train traveling at six to twenty miles an hour, saw the lady for a distance of 75 to 100 yards when but a few feet away his vision was momentarily "obstructed by the smoke stack of the engine." There were no signals and no attempt to stop the train. Among other claims it was urged that the train did not strike the plaintiff, that she turned suddenly in fright as the train passed and fell upon the gravel path, thus injuring her hip. But the court held, despite the railroad's proof, that the evidence justified the finding that she was struck by the train. It was also held that the evidence justified a finding of oblivious peril, awareness of her peril on the part of the engineer and failure thereafter to signal or stop.

In these two latter cases there were eyewitnesses and evidence that the deceased in one case and the plaintiff in the other had not been injured before they were supposed to have been struck by the trains. There is no such evidence in this case; on the other hand, there is no evidence as to Grady's condition except that he was prone beside the track and when his body was reached it bore the described wounds. The parties point to and speculatively elaborate upon the various possible theories as to what could have happened to Grady, how he was or was not injured by the train, but as indicated, in the detailed circumstances the finding of his body, with his head, shoulder and arm injured, beside the track was sufficient to support the inference and finding that he was hit by the train, and the other requisite elements of a cause of action under the Arkansas lookout statute being supported and permissible inferences it may not be said, as the Arkansas court so often states, "as a matter of law that the operators of the train were free from negligence" [209 Ark. 1037, 193 S.W.2d 659] after discovery of the perilous position of a person alongside its tracks. Missouri Pacific R. Co. v. Moore, supra. The

detailed facts and circumstances of this case fall within the substantive law of Arkansas as it has been set forth and authoritatively declared in the Evans, Thompson, Hill, Thomas and Crick cases, supra, rather than within the Scott case, supra, Missouri Pac. R. Co. v. Severe, 202 Ark. 277, 150 S.W.2d 42, or Missouri Pacific R. Co. v. McAlister, 205 Ark. 179, 168 S.W.2d 616, and accordingly the judgment is affirmed.

The respondent filed a motion to dismiss the railroad's appeal but in view of this disposition of the cause it is not deemed necessary to entertain or consider the motion and it is overruled.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.